**FILED**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NOV 2 1 2007
Nov. 21, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| ALVIN POWELL and CYNTHIA POWELL, | ) | JH |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 07CV6594 |
| | ) | JUDGE LEINENWEBER |
| FLAGSTAR BANK, FSB, MORTGAGE | ) | MAG. JUDGE DENLOW |
| ELECTRONIC REGISTRATION SYSTEMS, | ) | |
| INC., REGENT TITLE INSURANCE AGENCY, | ) | |
| LLC, CHICAGO REALTY NETWORK, LLC, and | ) | |
| MATRICIA J. JACKSON, an individual, | ) | **JURY DEMANDED** |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

### INTRODUCTION

1.      Plaintiffs Alvin Powell and Cynthia Powell bring this action against a mortgage lender and its affiliates to rescind a mortgage for violation of: (A) the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226; (B) the Illinois Title Insurance Act, 215 ILCS § 155/1; and (C) the Illinois Consumer Fraud Act, 815 ILCS § 505/2.

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA). Defendants transact business in the District and are deemed to reside here.

### PARTIES

3.      Plaintiffs Alvin Powell and Cynthia Powell ("the Powells")  are husband

1

and wife and jointly own and reside in a home at 14347 S. Sherman Avenue, Posen, Illinois 60469.

4.     Defendant Flagstar Bank, FSB ("Flagstar") is a bank which does business in Illinois, including maintaining a loan center in Gurnee, Illinois. Its business address is 5151 Corporate Drive, Troy, MI 48098.

5.     Flagstar is the assignee and current holder of the Powells' loan and is listed as the lender on some of the Powells' loan documents.

6.     Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation doing business in Illinois. Its registered agent and office are CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

7.     MERS is the mortgagee under the Powells' mortgage.

8.     Defendant Regent Title Insurance Agency, LLC ("Regent") is an Illinois limited liability company. Its business address is 33 N. Dearborn, Suite 803, Chicago, IL 60602. Its registered agent and office are Michael S. Roberts, 55 W. Monroe, Suite 1700, Chicago, IL 60603.

9.     Regent acted as the closing agent for the Powells' mortgage and as agent for Ticor Title Insurance Company in regard to the sale of title insurance to the Powells.

10.     Defendant Chicago Realty Network - Real Estate, LLC ("Chicago Realty") is an Illinois limited liability company. Its business address is 5707-5711 S. Wentworth, Chicago, IL 60621. Its registered agent and office are Susan Meyer, 180 N. LaSalle Street, Suite 2700, Chicago, IL 60601.

11.     Chicago Realty was the broker for the Powells' loan and the original

2

lender pursuant to the mortgage, the note, and the settlement statement signed by the Powells.

12.    Chicago Realty is a "creditor" as defined in TILA and Regulation Z.

13.    Defendant Matricia J. Jackson ("Jackson") is a representative of Chicago

Realty and holds Illinois licenses as a both a Licensed Real Estate Salesperson and a Loan

Originator (license number 031.0022223). On information and belief, she may be found in Cook

County, Illinois, at 14414 Minerva Avenue, Dolton, Illinois 60419.

## FACTS RELATING TO PLAINTIFFS

14.    On or around April 26, 2007, plaintiffs applied for a mortgage though

Chicago Realty.

15.    Their contact at Chicago Realty was Jackson and they spoke to her many

times by telephone and also relayed information to her through her husband, Jeffery Jackson.

16.    Jackson signed a document as "Loan Originator" with the Powells entitled

"Mortgage Broker Fee Agreement and Disclosure" on April 26, 2007; however, Jackson did not

become licensed as a Loan Originator until May 24, 2007 according to the State of Illinois

Division of Banking website .

17.    Plaintiffs needed and used the loan for personal, family or household

purposes, namely, refinancing of prior debt incurred for such purposes.

18.    The Powells had rejected a previous loan offer because the loan officer

had told them they had to pay a more than $9,258 disputed debt out of the proceeds of the loan as

a condition of the deal.

19.    At the time the Powells signed the loan application with Chicago Realty,

3

they told Jackson that they would not take the loan if they had to pay the $9,258 disputed debt. Mr. Powell reiterated this during a phone conversation that took place on June 19, 2007 at around 2:20 p.m. in front of witnesses. Both times, Jackson assured the Powells everything was fine

20.     Before the closing, the Powells provided Jackson with documentation on their property taxes, which came to approximately $1,600 per year.

21.     Before the closing, the Powells provided Jackson with information on the maximum monthly payment they could make, namely $750.

22.     The loan was closed on June 21, 2007 at the Powells' home.

23.     The following are documents relating to the loan:

    (1)     A note, Exhibit A;

    (2)     A mortgage, Exhibit B;

    (3)     Two different settlement statements, Exhibits C-D, only one of which (Exh. C) plaintiffs received and signed at the closing;

    (4)     A Truth in Lending statement, Exhibit E;

    (5)     The three-day notice of right to cancel required by the Federal Reserve Board, Exhibit F;

24.     The reason for two different settlement statements appears to be that the disbursements and other terms of the transaction were changed after the closing. The settlement statement signed by the Powells on June 21, 2007 (Exh. C), shows the Powells would receive

$53,117.52 out of the loan proceeds (Exh. C, line 303). The second settlement statement (Exh. D), faxed to the Powells' counsel on June 28, 2007 by Regent, shows $11,711.00 of unauthorized disbursements, some of which were for debts that had been discharged in bankruptcy or otherwise satisfied. The Powells received $41,406.52 cash back on June 27, 2007 (Exh. D, line 303).

     25.    Attached as <u>Exhibit G</u> is the June 28, 2007 fax, which includes the second settlement statement that was sent to plaintiffs' counsel along with the closing instructions and a summary of additional disbursements. Plaintiffs had not seen any of these documents, including the version of the settlement statement saying they would receive only $41,406.52, before Regent faxed them to the Powells' counsel on June 28, 2007.

     26.    The settlement statement that was given to plaintiffs at closing indicates settlement charges of $3.761.90 (Exh. C, line 103), whereas the settlement statement faxed to plaintiff later has settlement charges of $13,657.90 and additional disbursements of $1,795. (<u>Exh. D</u>, lines 103 & 112).

     27.    After the closing, the Powells received documents telling them that their payment, including escrow, would increase to more than $750, the maximum they had told Jackson they could afford. They then discovered that their loan documents showed a monthly tax liability of only $5.33 (or $63.96 annually), whereas their tax liability was actually around $1,600 a year (<u>see</u> Exhibit H, a "First Payment Letter" issued to the clients on June 21, 2007).

     28.    Plaintiffs did not receive the second settlement statement until after the end of the TILA rescission period, and they did not receive new 3-day notices allowing them

to rescind the loan under the terms disclosed on the second settlement statement.

29.    Plaintiff Alvin Powell called Jackson and Regent to protest the unauthorized payoffs and to try to get the cash he had been promised at the closing. When Regent mailed the checks to the Powells for disbursement, the Powells returned them on or around August 9, 2007 to Regent by certified mail with a letter of protest that explained that the payments were unauthorized and the reasons certain payments were disputed or barred. They did not hear from Regent after that and do not know what happened to the $11,711.00 they returned.

30.    Chicago Realty received a yield spread premium of more than $1,500.00 in exchange for increasing the interest rate on plaintiffs' loan. Chicago Realty was the original lender, selling or assigning the loan to Flagstar on August 1, 2007 (Exhibit I). It also received fees amounting to almost $2,000.

## RIGHT TO RESCIND

## COUNT I – TRUTH IN LENDING ACT

31.    Plaintiffs incorporate paragraphs 1-30.

32.    This claim is against Flagstar, MERS, and Chicago Realty.

33.    In order to give consumer borrowers the opportunity to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three days of receiving notice of their right to rescind, whichever is later. More specifically, the statute, provides that:

**Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so.** (15 U.S.C. § 1635(a)).

34.    To ensure that rescission is a viable option, the statute also provides that if

the customer elects to rescind, the customer is entitled to the return of all money or property that

the customer has given as part of the credit transaction.  More specifically, the statute provides:

**When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission.  Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction.** (15 U.S.C. § 1635(b).)

35.    To ensure that home owner borrowers are aware of these rights, the statute

requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately.

More specifically, the statute provides:

**The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section.  The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.** (15 U.S.C. § 1635(a).)

36.    Regulation Z, promulgated by the Federal Reserve Board pursuant to the

7

Truth in Lending Act, amplifies the statutory requirements. The regulation restates the statutory

rescission right, 12 C.F.R. § 226.23(a), and requires that the creditor "deliver" to each person

entitled to rescind "two copies" of a document that "clearly and conspicuously disclose" 12

C.F.R. § 226.23(b)(1) the borrower's rescission rights.

> 37.    More specifically, the regulation provides:

> **In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

> **(i) The retention or acquisition of a security interest in the consumer's principal dwelling.**

> **(ii) The consumer's right to rescind the transaction.**

> **(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

> **(iv) The effects of rescission, as described in paragraph (d) of this section.**

> **(v) The date the rescission period expires.**  (12 C.F.R. § 226.23(b)(1).)

> 38.    In connection with the plaintiffs' loan, Chicago Realty and/or Flagstar

failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in

violation of 15 U.S.C. §1635 and 12 C.F.R. § 226.23, and failed to provide the required financial

disclosures, in violation of 15 U.S.C. §1638 and 12 C.F.R. §226.18, for (without limitation) the

reasons stated below.

8

39.     The documents are dated as if the transaction was consummated on June 21, 2007, after which the terms of the transaction changed.

40.     In fact, the loan was never been properly consummated, since plaintiffs did not sign the version of the settlement statement providing for $11,711.00 in disbursements to creditors and a cash payout of only $41,406.52.

41.     The documents do not reflect the actual terms of the transaction.

42.     The Powells' sent a letter to Flagstar requesting rescission on or around August 6, 2007.  Additionally, counsel for the Powells sent notice of rescission to Chicago Realty, MERS, and Flagstar on August 21, 2007.  A copy of counsel's letter is attached as Exhibit J.

43.     The loan has not been rescinded.

44.     Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

45.     15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

WHEREFORE, plaintiffs request that the Court enter judgment in favor of plaintiffs and against defendants for:

(1)    A judgment voiding plaintiffs' mortgage, capable of recordation in the public records, and binding on defendants;

(2)    Statutory damages for the underlying disclosure violation;

(3)    If appropriate, statutory damages for failure to rescind;

(4)    Attorney's fees, litigation expenses and costs; and

(5)    Such other or further relief as the Court deems appropriate.

## COUNT II – ILLINOIS TITLE INSURANCE ACT

46.    Plaintiffs incorporate paragraphs 1–30.

47.    This claim is against Regent only.

48.    The Illinois Title Insurance Act, 215 ILCS § 155/1 et seq. ("ITIA") defines the "business of title insurance" to as "[i]ssuing as insurer or offering to issue as insurer title insurance, and . . .," in conjunction with this, the "handling of escrows, settlements, or closings." See 215 ILCS § 155/3(1)(A), id. (B)(iii). The ITIA further states that "[i]t is unlawful for any company to engage . . . in the business of title insurance without first procuring from the Secretary a certificate of authority," and that "[n]o . . . firm . . . or other legal entity shall act as or hold itself out to be a title insurance agent unless duly registered by a title insurance company with the Secretary." 215 ILCS § 155/5, id. § 155/16(a).

49.    The Powells' settlement statement lists Regent as the "Settlement Agent" and also shows Regent receiving fees on its own behalf for closing and settlement services, including a closing fee, a remote closing fee, a courier fee, and an Illinois Agent Registration

10

Fee.  See Exh. C; id. lines 1101-07.  A charge of $247.00 for Title Insurance was paid to Regent

purportedly "as agent for Ticor Title Insurance Company."  Id. line 1108.

50.     According to the Illinois Division of Financial Institutions online list of

licensed title companies (Exhibit K), Regent is not a licensed title company.

51.     Section 25 of the ITIA provides:

**(a) Any person or persons who violate the prohibitions or limitations of
subsection (a) of Section 21 of this Act shall be liable to the person or persons
charged for the settlement service involved in the violation for actual
damages.**

**(b) Any title insurance company or a title insurance agent who violates the
prohibitions or limitations of subsection (a) of Section 21 of this Act shall be
subject to injunctive relief.  If a permanent injunction is granted, the court
may award actual damages.  Reasonable attorney's fees and costs may be
awarded to the prevailing party.**

215 ILCS § 155/25.   Section 21 of the ITIA lists five grounds under which the Secretary of

State may fine or otherwise impose sanctions, including making material misstatements or

fraudulent misrepresentations, and misappropriating or tortiously converting monies held in a

fiduciary capacity.  See 215 ILCS § 155/21(a).

52.     During the closing of the Powells' mortgage on June 21, 2007, an agent of

Regent engaged in at least five material misstatements and misrepresentations.  First, the agent is

listed on the closing instructions as Dawnn Walker; however, the Powells dealt with a man, who

gave them a Regent business card that said "Paul Koutnik, Escrow Closer."  The Powells signed

documents in Mr. Kutnik's presence but did not see him sign anything.  Second, Mr. Koutnik had

the Powells complete paperwork stating that the closing took place at Regent's downtown

Chicago office location, when in fact it took place at the kitchen table in their home.  Third,

11

when the Powells specifically asked about the amount of cash back, the agent told them that they would get $53,117.52 back in cash from the loan as listed on their settlement statement, but they only received $41,406.52. Fourth, the agent failed to inform the Powells that the closing instructions provided that certain debts must be paid off. Fifth, the agent failed to provide the Powells with an accurate settlement statement reflecting these payoffs.

53.    Subsequent to the closing of the Powells' mortgage, sometime between June 21 and June 28, 2007, Regent engaged in further material misrepresentations. Specifically, Regent substituted a settlement statement containing different pay out amounts for the one the Powells had signed on July 21, 2007. Regent then issued checks to numerous creditors without the Powells' authorization. When the Powells returned the checks on August 9, 2007, Regent then held $11,711.00 of plaintiffs' monies, failing to refund the returned monies to the Powells or to take steps that would reduce the amount of their mortgage.

54.    Plaintiffs were induced to transact with Regent and Chicago Realty by means of these misrepresentations.

55.    Defendant Regent made the representation in the course of trade and commerce, namely the closing of a residential loan.

56.    Defendant Regent made the representation for the purpose of inducing reliance, in the form of the plaintiffs finalizing the loan with Regent and Chicago Realty.

57.    Plaintiffs were injured by Regent's misrepresentations in that they received $11,711.00 less cash out from their loan than expected and they have been paying interest on that sum as part of their mortgage although all checks were returned to Regent.

12

WHEREFORE, the Court should enter judgment in favor of plaintiffs and against Ameriquest for:

a.    A declaratory judgment that Regent's actions were unlawful;

b.    Injunctive relief barring Regent from engaging in the business of title insurance without a license;

c.    Appropriate damages;

d.    Attorney's fees and costs; and

e.    Such other and further relief as the Court deems proper.

## COUNT III – ILLINOIS CONSUMER FRAUD ACT

58.    Plaintiffs incorporate paragraphs 1-57.  This claim is against defendants Regent, Chicago Realty, and Jackson.

59.    Defendants engaged in unfair and deceptive acts and practices, in violation of § 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by promising at closing to give plaintiffs $53,117.52 and then sending plaintiffs only $41,406.52, by providing false documents for the plaintiffs' signature at closing, and by misrepresenting plaintiffs' property tax liability and the total monthly payment on the loan.

60.    Regent, Chicago Realty, and Jackson engaged in such practices in the course of trade and commerce, namely a residential loan transaction.

61.    Regent, Chicago Realty, and Jackson engaged in such practices for the purpose of inducing reliance on the part of plaintiffs to enter into the disadvantageous

transaction, namely a loan with higher monthly payments than they could afford and with a significantly lower cash payout than expected.

62.    Plaintiffs did, in fact, rely on Regent, Chicago Realty, and Jackson's promises by entering into a loan under terms that they would have rejected had they known about them.

63.    Plaintiffs were damaged as a result.  Specifically, they received $11,711.00 less cash than expected, they are paying a higher monthly payment than disclosed, and they are paying interest on $11,711.00 that remains undisbursed.

64.    Regent, Chicago Realty, and Jackson's conduct was intentionally deceptive and malicious.  The plaintiffs took care to disclose and confirm material terms of the loan before signing the loan documents only to discover that a second settlement statement had been substituted by one of the defendants after closing.  Mr. Powell is on disability and he and his wife have suffered considerable emotional anguish over this loan.  Substantial punitive damages are warranted.

WHEREFORE, plaintiffs request that the Court enter judgment in their favor and against defendants for the following relief:

        a.    Compensatory and punitive damages;

        b.    Attorney's fees, litigation expenses and costs; and

        c.    Such other or further relief as the Court deems appropriate.

_____
Daniel A. Edelman

14

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
Michelle R. Teggelaar
Deborah A. Morgan
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## **JURY DEMAND**

Plaintiffs demand trial by jury.

_____
Daniel A. Edelman

T:\20061\Pleading\Complaint_Pleading.WPD

# EXHIBIT A

V1 WBCD LOAN # 501483999
MIN: 100052550148399966

# NOTE

JUNE 21, 2007
[Date]

Chicago,
[City]

ILLINOIS
[State]

14347 S SHERMAN AVE, POSEN, IL 60469-1026
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.    $100,000.00   (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is  CHICAGO REALTY NETWORK, A ILLINOIS
CORPORATION.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a
yearly rate of   6.875%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section
6(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the      1ST     day of each month beginning on  AUGUST 1, 2007.
I will make these payments every month until I have paid all of the principal and interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be
applied to interest before Principal. If, on     JULY 1, 2037,          I still owe amounts under this Note, I will
pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
5709 S WENTWORTH
CHICAGO, IL  60621

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S.      $656.93.

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known
as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate
a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will
use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply
my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to
reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in
the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest
or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any
such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any

Initials: _____

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3200 1/01
© 1999-2007 Online Documents, Inc.              Page 1  of  3                              F3200NOT  0701
                                                                                          06-20-2007 13:15

sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          15          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          5.000%   of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which

Initials: _____

V1 WBCD LOAN # 501483999

Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
CYNTHIA POWELL

_____(Seal)
ALVIN POWELL

PAY TO THE ORDER OF
FLAGSTAR BANK, FSB
WITHOUT RECOURSE

CHICAGO REALTY NETWORK

BY:_____

PRINTED NAME:_____

ITS:_____

**[Sign Original Only]**

# EXHIBIT B

After Recording Return To:
FLAGSTAR BANK
5151 CORPORATE DRIVE
TROY, MI 48098
FINAL DOCUMENTS, MAIL STOP W-530-3

This instrument was prepared by:

V1 WBCD LOAN # 501483999

———————————————————— [Space Above This Line For Recording Data] ————————————————————

## MORTGAGE

MIN 100052550148399966

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **JUNE 21, 2007,**                together with all Riders to this document.

**(B) "Borrower"** is **Cynthia Powell and Alvin Powell.**

Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument.

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3014 1/01
© 1999-2004 Online Documents, Inc.                    **Page 1 of 12**

Initials: _____
ILEDEED    ILEDEDL  0402
06-20-2007 13:15

**V1 WBCD LOAN # 501483999**

MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender" is CHICAGO REALTY NETWORK.**

Lender is a **CORPORATION**,                                    organized and existing under the laws of
**ILLINOIS.**                                    Lender's address is **5709 S WENTWORTH,**
**CHICAGO, IL 60621.**

**(E) "Note"** means the promissory note signed by Borrower and dated **JUNE 21, 2007.**    The Note states that Borrower owes Lender *******************************ONE HUNDRED THOUSAND AND NO/100 **************************************************** Dollars (U.S.    **$100,000.00    )** plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JULY 1, 2037.**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider
- [ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] Other(s) [specify]
- [ ] 1-4 Family Rider    [ ] Biweekly Payment Rider
- [ ] V.A. Rider

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

V1 WBCD LOAN # 501483999

**TRANSFER OF RIGHTS IN THE PROPERTY**
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the  COUNTY                                      [Type of Recording Jurisdiction] of
COOK                                          [Name of Recording Jurisdiction]:
SEE ATTACHED TITLE REPORT
APN #: 28-12-207-023-0000

which currently has the address of 14347 S SHERMAN AVE, POSEN,
                                                                                         [Street] [City]
Illinois      60469-1026      ("Property Address"):
              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.
Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any

payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless

V1 WBCD LOAN # 501483999

an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form

Initials:

ILEDEDL  0402
06-20-2007 13:15

V1 WBCD LOAN # 501483999

of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under

Initials: _____

ILEDEDL   0402
06-20-2007 13:15

V1 WBCD LOAN # 501483999

this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to

V1 WBCD LOAN # 501483999

receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests

transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws

V1 WBCD LOAN # 501483999

of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

**25. Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3014 1/01          Initials: _____
© 1999-2004 Online Documents, Inc.                    Page 11 of 12                    ILEDEDL  0402
                                                                                    06-20-2007 13:15

V1 WBCD LOAN # 501483999

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____(Seal)
CYNTHIA POWELL

_____(Seal)
ALVIN POWELL

State of ILLINOIS
County of COOK

    The foregoing instrument was acknowledged before me this _____ (date)
by _____

_____
_____

(name of person acknowledged).

_____
(Signature of Person Taking Acknowledgement)

_____ (Title or Rank)

_____ (Serial Number, if any)

# EXHIBIT C

OMB NO. 2502-0265

**A.**

U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT

**SETTLEMENT STATEMENT**

| B. TYPE OF LOAN: |
| --- |
| 1. ☐ FHA    2. ☐ FmHA    3. ☒ CONV. UNINS.    4. ☐ VA    5. ☐ CONV. INS. |
| 6. FILE NUMBER: 132904-RILC |
| 7. LOAN NUMBER: 501483999 |
| 8. MORTGAGE INS CASE NUMBER: |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.
1.0   3/66   (132904-RILC.PFD/132904-RILC/21)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
| --- | --- | --- |
| CYNTHIA POWELL and<br>ALVIN POWELL<br>14347 SHERMAN AVE<br>POSEN, IL 60469 | | FLAGSTAR BANK, FSB<br>5151 CORPORATE DRIVE<br>TROY, MI 48098 |

| G. PROPERTY LOCATION:<br>14347 SHERMAN AVE<br>POSEN, IL 60469<br>Cook County, Illinois | H. SETTLEMENT AGENT:<br>REGENT TITLE INSURANCE AGENCY, LLC<br><br>PLACE OF SETTLEMENT<br><br>33 NORTH DEARBORN, SUITE 803<br><br>CHICAGO, IL 60602 | I. SETTLEMENT DATE:<br><br>June 21, 2007<br><br>Disburse:06/26/07 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
| --- | --- | --- | --- |
| **100.  GROSS AMOUNT DUE FROM BORROWER:** | | **400.  GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 3,761.90 | 403. | |
| 104. Payoff first mortgage to COUNTRYWIDE HOME LOANS | 39,291.20 | 404. | |
| 105. Payoff second mortgage to AMERICAN FAMILY FINANC | 3,829.38 | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes          to | | 406. City/Town Taxes          to | |
| 107. County Taxes          to | | 407. County Taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120.  GROSS AMOUNT DUE FROM BORROWER** | 46,882.48 | **420.  GROSS AMOUNT DUE TO SELLER** | |
| **200.  AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500.  REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See instructions) | |
| 202. Principal Amount of New Loan(s) | 100,000.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes          to | | 510. City/Town Taxes          to | |
| 211. County Taxes          to | | 511. County Taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220.  TOTAL PAID BY/FOR BORROWER** | 100,000.00 | **520.  TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300.  CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600.  CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 46,882.48 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 100,000.00 ) | 602. Less Reductions Due Seller (Line 520) | ( ) |
| **303.  CASH ( FROM ) ( X TO ) BORROWER** | 53,117.52 | **603.  CASH ( TO ) ( FROM ) SELLER** | 0.00 |

By signing page 2 of this statement, the signatories acknowledge receipt of a completed copy of page 1 of this two page statement.

## L. SETTLEMENT CHARGES

| | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| **700. TOTAL COMMISSION** Based on Price $        @        % | | |
| Division of Commission (line 700) as Follows: | | |
| 701. $                to | | |
| 702. $                to | | |
| 703. Commission Paid at Settlement | | |
| 704.                to | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee        %        to | | |
| 802. Loan Discount        %        to | | |
| 803. Appraisal Fee        to  FLAGSTAR BANK, FSB | | |
| 804. Credit Report        to | | |
| 805. Lender's Inspection Fee        to | | |
| 806. Mortgage Ins. App. Fee        to | | |
| 807. FLOOD CERTIFICATION        to  EDSI                POC:8.50 | | |
| 808. TAX SERVICE FEE        to  1ST AMERICAN R.E.TA        POC:89.00 | | |
| 809. ADMINISTRATIVE FEE        to  FLAGSTAR BANK, FSB | 620.00 | |
| 810. | | |
| 811. | | |
| 812. YIELD SPREAD PD BY LENDER        to  CHICAGO REALTY NETWORK        POCL:1590.00 | | |
| 813. ORIGINATION FEE        to  CHICAGO REALTY NETWORK | 1,000.00 | |
| 814. PROCESSING FEE        to  CHICAGO REALTY NETWORK | 995.00 | |
| 815. | | |
| 816. | | |
| 817. | | |
| 818. | | |
| 819. | | |
| 820. | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest From  05/26/07  to  07/01/07  @  $  18.835600/day  (  5 days        %) | 94.18 | |
| 902. Mortgage Insurance Premium for        months to | | |
| 903. Hazard Insurance Premium for  1.0  years  to STATE FARM INSURANCE | 186.00 | |
| 904. | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | |
| 1001. Hazard Insurance        4.000  months  @ $        51.33 per month | 205.32 | |
| 1002. Mortgage Insurance        months  @ $        per month | | |
| 1003. City/Town Taxes        months  @ $        per month | | |
| 1004. County Taxes        6.000  months  @ $        5.33 per month | 31.98 | |
| 1005. Assessments        months  @ $        per month | | |
| 1006.        months  @ $        per month | | |
| 1007.        months  @ $        per month | | |
| 1008. AGGREGATE ESCROW ADJUSTMEI        months  @ $        per month | -10.55 | |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or Closing Fee        to  REGENT TITLE INSURANCE AGENCY, LLC        closing fee | 250.00 | |
| 1102. Abstract or Title Search        to | | |
| 1103. Title Examination        to | | |
| 1104. Title Insurance Binder        to | | |
| 1105. REMOTE CLOSING FEE        to  REGENT TITLE INSURANCE AGENCY, LLC | 50.00 | |
| 1106. COURIER FEE        to  REGENT TITLE INSURANCE AGENCY, LLC | 30.00 | |
| 1107. IL AGENT REGISTRATION FEE        to  REGENT TITLE INSURANCE AGENCY, LLC | 3.00 | |
| (Includes above item numbers:                ) | | |
| 1108. Title Insurance        to  Regent Title (as agent for TICOR TITLE INSURANCE COMPANY | 247.00 | |
| (Includes above item numbers:1109 AND 1110                ) | | |
| 1109. Lender's Coverage        $        100,000.00        247.00 | | |
| 1110. Owner's Coverage        $ | | |
| 1111. | | |
| 1112. | | |
| 1113. | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | |
| 1201. Recording Fees: Deed $        ; Mortgage $        60.00;        Releases $        recording fees | 60.00 | |
| 1202. City/County Tax/Stamps: Deed        : Mortgage | | |
| 1203. State Tax/Stamps:        Deed        : Mortgage | | |
| 1204. | | |
| 1205. | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. Survey        to | | |
| 1302. Pest Inspection        to | | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| **1400. TOTAL SETTLEMENT CHARGES** (Enter on Lines 103, Section J and 502, Section K) | 3,761.90 | |



## ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

|  |  |
|---|---|
| **Borrower:** | CYNTHIA POWELL and ALVIN POWELL |
| **Lender:** | FLAGSTAR BANK, FSB |
| **Settlement Agent:** | REGENT TITLE INSURANCE AGENCY, LLC |
|  | (312)346-0033 |
| **Place of Settlement:** | 33 NORTH DEARBORN, SUITE 603 |
|  | CHICAGO, IL 60602 |
| **Settlement Date:** | June 21, 2007 |
| **Disbursement Date:** | June 26, 2007 |
| **Property Location:** | 14347 SHERMAN AVE |
|  | POSEN, IL 60469 |
|  | Cook County, Illinois |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____
CYNTHIA POWELL

_____
ALVIN POWELL

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_____
REGENT TITLE INSURANCE AGENCY, LLC
Settlement Agent

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

# EXHIBIT D

OMB NO. 2502-0265

| A. | | B. TYPE OF LOAN: | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT** | | 1. ☐ FHA  2. ☐ FmHA  3. ☒ CONV. UNINS.  4. ☐ VA  5. ☐ CONV. INS. | | | | | | |
| **SETTLEMENT STATEMENT** | | 6. FILE NUMBER:  132904-RILC | | | | 7. LOAN NUMBER:  501483999 | | |
| | | 8. MORTGAGE INS CASE NUMBER: | | | | | | |

C. NOTE:  *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*
1.0  3/86  (132904-RILC.PPD/132904-RILC31)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| CYNTHIA POWELL and ALVIN POWELL 14347 SHERMAN AVE POSEN, IL 60469 | | FLAGSTAR BANK, FSB 5151 CORPORATE DRIVE TROY, MI 48098 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: | I. SETTLEMENT DATE: |
|---|---|---|
| 14347 SHERMAN AVE POSEN, IL 60469 Cook County, Illinois | REGENT TITLE INSURANCE AGENCY, LLC  PLACE OF SETTLEMENT 33 NORTH DEARBORN, SUITE 803 CHICAGO, IL 60602 | June 21, 2007  Disburse:06/26/07 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 13,657.90 | 403. | |
| 104. Payoff first mortgage to COUNTRYWIDE HOME LOANS | 39,291.20 | 404. | |
| 105. Payoff second mortgage to AMERICAN FAMILY FINANC | 3,829.38 | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes          to | | 406. City/Town Taxes          to | |
| 107. County Taxes          to | | 407. County Taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. See addit'l disb. exhibit | 1,795.00 | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 58,573.48 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See instructions) | |
| 202. Principal Amount of New Loan(s) | 100,000.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes          to | | 510. City/Town Taxes          to | |
| 211. County Taxes          to | | 511. County Taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 100,000.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 58,573.48 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | (100,000.00) | 602. Less Reductions Due Seller (Line 520) | ( ) |
| **303. CASH ( FROM ) ( X TO ) BORROWER** | 41,426.52 | **603. CASH ( TO )( FROM ) SELLER** | 0.00 |

By signing page 2 of this statement, the signatories acknowledge receipt of a completed copy of page 1 of this two page statement.

Page 2

## L. SETTLEMENT CHARGES

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL COMMISSION Based on Price          $          @          % | | | |
| Division of Commission (line 700) as Follows: | | | |
| 701. $          to | | | |
| 702. $          to | | | |
| 703. Commission Paid at Settlement | | | |
| 704. | to | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee          %          to | | | |
| 802. Loan Discount          %          to | | | |
| 803. Appraisal Fee          to  FLAGSTAR BANK, FSB | | | |
| 804. Credit Report          to | | | |
| 805. Lender's Inspection Fee          to | | | |
| 806. Mortgage Ins. App. Fee          to | | | |
| 807. FLOOD CERTIFICATION          to  EDSI          POC:8.50 | | | |
| 808. TAX SERVICE FEE          to  1ST AMERICAN R.E.TA          POC:69.00 | | | |
| 809. ADMINISTRATIVE FEE          to  FLAGSTAR BANK, FSB | | 620.00 | |
| 810. | | | |
| 811. | | | |
| 812. YIELD SPREAD PD BY LENDER          to  CHICAGO REALTY NETWORK          POC:1540.00 | | | |
| 813. ORIGINATION FEE          to  CHICAGO REALTY NETWORK | | 1,000.00 | |
| 814. PROCESSING FEE          to  CHICAGO REALTY NETWORK | | 995.00 | |
| 815. | | | |
| 816. | | | |
| 817. | | | |
| 818. | | | |
| 819. | | | |
| 820. | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From  06/26/07  to  07/01/07  @ $  18.835600/day  (  5 days  %) | | 94.18 | |
| 902. Mortgage Insurance Premium for          months to | | | |
| 903. Hazard Insurance Premium for  1.0  years  to STATE FARM INSURANCE | | 186.00 | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance          4.000  months  @ $  51.33 per month | | 205.32 | |
| 1002. Mortgage Insurance          months  @ $  per month | | | |
| 1003. City/Town Taxes          months  @ $  per month | | | |
| 1004. County Taxes          6.000  months  @ $  5.33 per month | | 31.98 | |
| 1005. Assessments          months  @ $  per month | | | |
| 1006.          months  @ $  per month | | | |
| 1007.          months  @ $  per month | | | |
| 1008. AGGREGATE ESCROW ADJUSTME[          months  @ $  per month | | -10.58 | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or Closing Fee          to  REGENT TITLE INSURANCE AGENCY, LLC          closing fee | | 250.00 | |
| 1102. Abstract or Title Search          to | | | |
| 1103. Title Examination          to | | | |
| 1104. Title Insurance Binder          to | | | |
| 1105. REMOTE CLOSING FEE          to  REGENT TITLE INSURANCE AGENCY, LLC | | 50.00 | |
| 1106. COURIER FEE          to  REGENT TITLE INSURANCE AGENCY, LLC | | 30.00 | |
| 1107. IL AGENT REGISTRATION FEE          to  REGENT TITLE INSURANCE AGENCY, LLC | | 3.00 | |
| (Includes above item numbers:          ) | | | |
| 1108. Title Insurance          to  Regent Title (as agent for TICOR TITLE INSURANCE COMPANY          ) | | 247.00 | |
| (Includes above item numbers:1109 AND 1110          ) | | | |
| 1109. Lender's Coverage          $  100,000.00          247.00 | | | |
| 1110. Owner's Coverage          $ | | | |
| 1111. | | | |
| 1112. | | | |
| 1113. | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees: Deed $          ; Mortgage $          60.00;          Releases $          recording fees | | 60.00 | |
| 1202. City/County Tax/Stamps: Deed          ; Mortgage | | | |
| 1203. State Tax/Stamps:          Deed          ; Mortgage | | | |
| 1204. | | | |
| 1205. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey          to | | | |
| 1302. Pest Inspection          to | | | |
| 1303. PAYMENT          to  MED BUSI BUR | | 9,258.00 | |
| 1304. PAYMENT          to  ILL COLL SVC | | 488.00 | |
| 1305. PAYMENT          to  MED BUSI BUR | | 150.00 | |
| **1400. TOTAL SETTLEMENT CHARGES  (Enter on Lines 103, Section J and 502, Section K)** | | 13,657.90 | |

## ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

|  |  |
|---|---|
| **Borrower:** | CYNTHIA POWELL and ALVIN POWELL |
| **Lender:** | FLAGSTAR BANK, FSB |
| **Settlement Agent:** | REGENT TITLE INSURANCE AGENCY, LLC |
|  | (312)346-0033 |
| **Place of Settlement:** | 33 NORTH DEARBORN, SUITE 803 |
|  | CHICAGO, IL 60602 |
| **Settlement Date:** | June 21, 2007 |
| **Disbursement Date:** | June 26, 2007 |
| **Property Location:** | 14347 SHERMAN AVE |
|  | POSEN, IL 60469 |
|  | Cook County, Illinois |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____
CYNTHIA POWELL

_____
ALVIN POWELL

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_____
REGENT TITLE INSURANCE AGENCY, LLC
Settlement Agent

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

# EXHIBIT E

# TRUTH-IN-LENDING DISCLOSURE STATEMENT

**DATE: JUNE 21, 2007**

**LOAN #: 501483999**
**LOAN AMT: $100,000.00**

CHICAGO REALTY NETWORK
5709 S WENTWORTH
CHICAGO, IL 60621

BORROWER(S):
CYNTHIA POWELL and ALVIN POWELL

PROPERTY ADDRESS: 14347 S SHERMAN AVE
POSEN, IL 60469-1026

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | ☐ |
|---|---|---|---|---|
| 7.173 % | $ 139,452.65 | $ 97,040.82 | $ 236,493.47 | |

Your payment schedule will be:

| No. of Payment(s) | Amount of Payment(s) | Due Monthly Beginning | No. of Payment(s) | Amount of Payment(s) | Due Monthly Beginning | No. of Payment(s) | Amount of Payment(s) | Due Monthly Beginning |
|---|---|---|---|---|---|---|---|---|
| 359 | $656.93 | 8/01/2007 | | | | | | |
| 1 | $655.60 | 7/01/2037 | | | | | | |

INSURANCE: THE FOLLOWING INSURANCE IS REQUIRED TO OBTAIN CREDIT: PROPERTY INSURANCE. YOU MAY OBTAIN THIS INSURANCE FROM ANYONE YOU WANT THAT IS REASONABLY ACCEPTABLE TO THE CREDITOR. CREDIT LIFE AND CREDIT DISABILITY INSURANCE ARE NOT REQUIRED TO OBTAIN CREDIT.

SECURITY: YOU ARE GIVING A SECURITY INTEREST IN THE PROPERTY LOCATED
AT: 14347 S SHERMAN AVE, POSEN, IL 60469-1026.

FILING/RECORDING FEE: $62.00

LATE CHARGE: IF A PAYMENT IS MORE THAN 15 DAYS LATE, YOU WILL BE CHARGED 5.000% OF THE PAYMENT.

PREPAYMENT: IF YOU PAY OFF EARLY, YOU WILL NOT HAVE TO PAY A PENALTY AND YOU WILL NOT BE ENTITLED TO A REFUND OF PART OF THE FINANCE CHARGE.

ASSUMPTION: SOMEONE BUYING YOUR PROPERTY CANNOT ASSUME THE REMAINDER OF THE MORTGAGE ON THE ORIGINAL TERMS.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

THE UNDERSIGNED ACKNOWLEDGE RECEIVING AND READING A COMPLETED COPY OF THIS DISCLOSURE. THIS DOCUMENT IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND.

_____          _____          _____          _____
CYNTHIA POWELL                   DATE             ALVIN POWELL                       DATE

# EXHIBIT F

V1 NRCD LOAN # 501483999

## NOTICE OF RIGHT TO CANCEL

Borrower(s):
CYNTHIA POWELL

Mailing Address:
14347 S SHERMAN AVE
POSEN, IL 60469-1026
Security interest in property described as:
14347 S SHERMAN AVE
POSEN, IL 60469-1026

**YOUR RIGHT TO CANCEL**
You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1)  the date of the transaction, which is

     JUNE 21, 2007          ; or

(2)  the date you received your Truth-in-Lending disclosures;
    or

(3)  the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

**HOW TO CANCEL**
If you decide to cancel this transaction, you may do so by notifying us in writing, at
Flagstar Bank, FSB                        Fax Number:  248-312-6955
Right of Rescission Department
Mail Stop R-375-3
5151 Corporate Drive
Troy, MI  48098

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of    JUNE 25, 2007   
(or midnight of the third business day following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL.**

_____       _____
CYNTHIA POWELL                              DATE

ON THIS DATE THE UNDERSIGNED EACH RECEIVED TWO (2) COMPLETED COPIES OF THE NOTICE OF
OPPORTUNITY TO CANCEL.

_____       _____
CYNTHIA POWELL                              DATE

© 1995-2002 Online Documents, Inc.

GRT4  0210
06-20-2007 13:15

# NOTICE OF RIGHT TO CANCEL

V1 WBCD LOAN # 501483999

Borrower(s):
CYNTHIA POWELL

Mailing Address:
14347 S SHERMAN AVE
POSEN, IL 60469-1026
Security interest in property described as:
14347 S SHERMAN AVE
POSEN, IL 60469-1026

## YOUR RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

  (1)  the date of the transaction, which is

        __JUNE 21, 2007_____; or
  (2)  the date you received your Truth-in-Lending disclosures;
        or
  (3)  the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**
If you decide to cancel this transaction, you may do so by notifying us in writing, at
Flagstar Bank, FSB                            Fax Number:  248-312-6955
Right of Rescission Department
Mail Stop E-375-3
5151 Corporate Drive
Troy, MI  48098

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of __JUNE 25, 2007_____
(or midnight of the third business day following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

_____       _____
CYNTHIA POWELL                            DATE

---

ON THIS DATE THE UNDERSIGNED EACH RECEIVED TWO (2) COMPLETED COPIES OF THE NOTICE OF OPPORTUNITY TO CANCEL.

_____       _____
CYNTHIA POWELL                            DATE

© 1995-2002 Online Documents, Inc.

GRT4  0210
06-20-2007 13:15

## NOTICE OF RIGHT TO CANCEL

V1 WRCD LOAN # 501483999

Borrower(s):
ALVIN POWELL

Mailing Address:
14347 S SHERMAN AVE
POSEN, IL 60469-1026
Security interest in property described as:
14347 S SHERMAN AVE
POSEN, IL 60469-1026

**YOUR RIGHT TO CANCEL**
You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

    (1)  the date of the transaction, which is

        JUNE 21, 2007           ; or
    (2)  the date you received your Truth-in-Lending disclosures; or
    (3)  the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**
If you decide to cancel this transaction, you may do so by notifying us in writing, at
Flagstar Bank, FSB                Fax Number:  248-312-6955
Right of Rescission Department
Mail Stop E-375-3
5151 Corporate Drive
Troy, MI 48098

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of  JUNE 25, 2007
(or midnight of the third business day following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

ALVIN POWELL                        DATE

---

**ON THIS DATE THE UNDERSIGNED EACH RECEIVED TWO (2) COMPLETED COPIES OF THE NOTICE OF OPPORTUNITY TO CANCEL.**

ALVIN POWELL                        DATE

© 1995-2002 Online Documents, Inc.

GRT4  0210
06-20-2007 13:15

V1 WBCD LOAN # 501483999

# NOTICE OF RIGHT TO CANCEL

Borrower(s):
ALVIN POWELL

Mailing Address:
14347 S SHERMAN AVE
POSEN, IL 60469-1026
Security interest in property described as:
14347 S SHERMAN AVE
POSEN, IL 60469-1026

**YOUR RIGHT TO CANCEL**
You are entering into a transaction that will result in a mortgage/lien/security interest on/in your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is

JUNE 21, 2007 _____ ; or

(2) the date you received your Truth-in-Lending disclosures;
or
(3) the date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage/lien/security interest is also cancelled. Within 20 calendar days after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage/lien/security interest on/in your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for you to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 calendar days of your offer, you may keep it without further obligation.

---

**HOW TO CANCEL**
If you decide to cancel this transaction, you may do so by notifying us in writing, at

Flagstar Bank, FSB                          Fax Number:  248-312-6955
Right of Rescission Department
Mail Stop E-375-3
5151 Corporate Drive
Troy, MI  48098

You may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than midnight of __JUNE 25, 2007__ (or midnight of the third business day following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

**I WISH TO CANCEL**

ALVIN POWELL _____          DATE _____

---

ON THIS DATE THE UNDERSIGNED EACH RECEIVED TWO (2) COMPLETED COPIES OF THE NOTICE OF OPPORTUNITY TO CANCEL.

ALVIN POWELL _____          DATE _____

© 1998-2002 Online Documents, Inc.

GRT4  0210
06-20-2007 13:15

# EXHIBIT G



# Regent Title   www.regenttitle.com

33 N. Dearborn, Suite 803, Chicago, IL 60602

**To:**

Company :

Fax Number :    **1(708)3889630**

Phone Number :

From :    **Sansaray Wardlaw**

Direct Phone:   **312-346-0033**

eFax Number    **312-346-7532**

Time Sent :    **Thursday, Jun 28, 2007   09:30AM**

Pages :    **7**

Description :    **POWELL**

**Atty Babb,**

**Item 16 on the lenders instructions list the items that must
be paid to fund this loan.**

**Sansaray 312 981 8313**

OMB NO. 2502-0265

| A. U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT **SETTLEMENT STATEMENT** | B. TYPE OF LOAN: |
|---|---|

| | 1. ☐ FHA | 2. ☐ FmHA | 3. ☒ CONV. UNINS. | 4. ☐ VA | 5. ☐ CONV. INS. |
|---|---|---|---|---|---|

6. FILE NUMBER: 132904-RILC
7. LOAN NUMBER: 601483999
8. MORTGAGE INS CASE NUMBER:

C. NOTE:  *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*   1.0  3/86  (132904-RILC.PFD/132904-RILC/31)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| CYNTHIA POWELL and ALVIN POWELL 14347 SHERMAN AVE POSEN, IL 60469 | | FLAGSTAR BANK, FSB 5151 CORPORATE DRIVE TROY, MI 48098 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: | I. SETTLEMENT DATE: |
|---|---|---|
| 14347 SHERMAN AVE POSEN, IL 60469 Cook County, Illinois | REGENT TITLE INSURANCE AGENCY, LLC PLACE OF SETTLEMENT 33 NORTH DEARBORN, SUITE 808 CHICAGO, IL 60602 | June 21, 2007 Disburse:06/26/07 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 13,657.90 | 403. | |
| 104. Payoff first mortgage to COUNTRYWIDE HOME LOANS | 39,291.20 | 404. | |
| 105. Payoff second mortgage to AMERICAN FAMILY FINANC | 3,829.38 | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes          to | | 406. City/Town Taxes          to | |
| 107. County Taxes          to | | 407. County Taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. See addit'l disb. exhibit | 1,795.00 | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 58,573.48 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 100,000.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes          to | | 510. City/Town Taxes          to | |
| 211. County Taxes          to | | 511. County Taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 100,000.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 58,573.48 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | (100,000.00) | 602. Less Reductions Due Seller (Line 520) | ( ) |
| **303. CASH ( FROM ) ( X TO ) BORROWER** | 41,426.52 | **603. CASH ( TO ) ( FROM ) SELLER** | 0.00 |

By signing page 2 of this statement, the signatories acknowledge receipt of a completed copy of page 1 of this two page statement.

## L. SETTLEMENT CHARGES

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| **700. TOTAL COMMISSION Based on Price** $ @ % | | | |
| Division of Commission (line 700) as Follows: | | | |
| 701. $           to | | | |
| 702. $           to | | | |
| 703. Commission Paid at Settlement | | | |
| 704. | to | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee        %        to | | | |
| 802. Loan Discount        %        to | | | |
| 803. Appraisal Fee        to  FLAGSTAR BANK, FSS | | | |
| 804. Credit Report        to | | | |
| 805. Lender's Inspection Fee        to | | | |
| 806. Mortgage Ins. App. Fee        to | | | |
| 807. FLOOD CERTIFICATION        to  EDSI | POC:8.50 | | |
| 808. TAX SERVICE FEE        to  1ST AMERICAN R.E.TA | POC:69.00 | | |
| 809. ADMINISTRATIVE FEE        to  FLAGSTAR BANK, FSB | | 620.00 | |
| 810. | | | |
| 811. | | | |
| 812. YIELD SPREAD PD BY LENDER        to  CHICAGO REALTY NETWORK | POC:1540.00 | | |
| 813. ORIGINATION FEE        to  CHICAGO REALTY NETWORK | | 1,000.00 | |
| 814. PROCESSING FEE        to  CHICAGO REALTY NETWORK | | 995.00 | |
| 815. | | | |
| 816. | | | |
| 817. | | | |
| 818. | | | |
| 819. | | | |
| 820. | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From  06/26/07  to  07/01/07  @ $  18.835600/day  (  5 days  %) | | 94.18 | |
| 902. Mortgage Insurance Premium for        months to | | | |
| 903. Hazard Insurance Premium for  1.0  years  to STATE FARM INSURANCE | | 186.00 | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance  4.000 months @ $  51.33 per month | | 205.32 | |
| 1002. Mortgage Insurance        months @ $        per month | | | |
| 1003. City/Town Taxes        months @ $        per month | | | |
| 1004. County Taxes  6.000 months @ $  5.33 per month | | 31.98 | |
| 1005. Assessments        months @ $        per month | | | |
| 1006.        months @ $        per month | | | |
| 1007.        months @ $        per month | | | |
| 1008. AGGREGATE ESCROW ADJUSTME]        months @ $        per month | | -10.58 | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or Closing Fee        to  REGENT TITLE INSURANCE AGENCY, LLC        closing fee | | 250.00 | |
| 1102. Abstract or Title Search        to | | | |
| 1103. Title Examination        to | | | |
| 1104. Title Insurance Binder        to | | | |
| 1105. REMOTE CLOSING FEE        to  REGENT TITLE INSURANCE AGENCY, LLC | | 50.00 | |
| 1106. COURIER FEE        to  REGENT TITLE INSURANCE AGENCY, LLC | | 30.00 | |
| 1107. IL AGENT REGISTRATION FEE        to  REGENT TITLE INSURANCE AGENCY, LLC | | 3.00 | |
| (includes above item numbers:                                        ) | | | |
| 1108. Title Insurance        to  Regent Title (as agent for TICOR TITLE INSURANCE COMPANY | | 247.00 | |
| (includes above item numbers:1109 AND 1110                                        ) | | | |
| 1109. Lender's Coverage        $  100,000.00        247.00 | | | |
| 1110. Owner's Coverage        $ | | | |
| 1111. | | | |
| 1112. | | | |
| 1113. | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees: Deed $        ; Mortgage $  60.00;        Releases $        recording fees | | 60.00 | |
| 1202. City/County Tax/Stamps: Deed        ; Mortgage | | | |
| 1203. State Tax/Stamps:  Deed        ; Mortgage | | | |
| 1204. | | | |
| 1205. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey        to | | | |
| 1302. Pest Inspection        to | | | |
| 1303. PAYMENT        to  MED BUSI BUR | | 9,258.00 | |
| 1304. PAYMENT        to  ILL COLL SVC | | 488.00 | |
| 1305. PAYMENT        to  MED BUSI BUR | | 150.00 | |
| **1400. TOTAL SETTLEMENT CHARGES  (Enter on Lines 103, Section J and 502, Section K)** | | 13,657.90 | |

## ADDITIONAL DISBURSEMENTS EXHIBIT

**Borrower:** CYNTHIA POWELL and ALVIN POWELL
**Lender:** FLAGSTAR BANK, FSB
**Settlement Agent:** REGENT TITLE INSURANCE AGENCY, LLC
(312)346-0033
**Place of Settlement:** 33 NORTH DEARBORN, SUITE 803
CHICAGO, IL 60602
**Settlement Date:** June 21, 2007
**Disbursement Date:** June 26, 2007
**Property Location:** 14347 SHERMAN AVE
POSEN, IL 60469
Cook County, Illinois

| PAYEE/DESCRIPTION | NOTE/REF NO | BORROWER | SELLER |
|---|---|---|---|
| MRSI PAYMENT | | 403.00 | |
| MED BUSI BUR PAYMENT | | 408.00 | |
| CDA/PONTIAC PAYMENT | | 357.00 | |
| DEPENDON COLLECTION PAYMENT | | 250.00 | |
| ILL COLL SVC PAYMENT | | 137.00 | |
| TARGET PAYMENT | | 242.00 | |
| **Total Additional Disbursements shown on Line 112/516** | | **$ 1,795.00** | **$ 0.00** |

V1 WBCD LOAN # 501683999

## Closing Instructions

To: Attorneys/Title Companies/Escrow Companies
Borrower(s): CYNTHIA POWELL AND ALVIN POWELL

From: CHICAGO REALTY NETWORK

Closer/Contact Person Dencan Walker
Telephone #: 7737266900 x 11                    Fax #: 7737266999

Enclosed you will find your settlement package for our mutual client. Please note the following:

A.  An insured closing letter must be on file with Flagstar Bank, FSB

    Or funds will not be sent to you for disbursement of the loan closings. For confirmation, please contact
    FLAGSTAR BANK, FSB

    at  (877) 362-6200.

B.  A standard HUD-1 Settlement Statement (RESPA) must be used and signed by both Borrowers and Sellers. All
    changes to the HUD-1 or fees on the closing instructions must be approved by your local Flagstar Bank regional
    office. A new TIL may be required.

C.  For your convenience we have enclosed a Loan Disbursement form which shows how the net check/wire was
    calculated. This form is for your purposes only and does not need to be sent back to us. If you have questions
    concerning your funds, you may contact the Funding Dept. at (877) 362-6200. Loan proceeds for purchases,
    second home and investor refinances will be delivered the day of settlement. Monies will be disbursed on the
    fourth day after settlement for refinance loans requiring rescision.
    (Keep in mind that we normally ship via Airborne.)

D.  Loan to be closed in the name of  CHICAGO REALTY NETWORK .

    [  ] Endorsement not required

    [x] Endorsement should read as follows:

        Pay to the order of: FLAGSTAR BANK, FSB WITHOUT RECOURSE
                             CHICAGO REALTY NETWORK
                             BY:
                             ITS _____

Proper endorsement of Note and Assignment, if applicable is mandatory prior to disbursement of broker's fees.

E.  The complete closed loan package must be sent under separate cover to the following address no later than
    72 business hours (96 hours for CA, HI, WA, OR, AK) after closing and/or disbursement.
    FLAGSTAR BANK, FSB
    5151 CORPORATE DRIVE
    TROY, MI 48098
    ATTENTION: CLOSED PACKAGE RECEIVING, W-800-1
    (800) 968-7700

    Late packages that are not received within this time frame will be charged a $100.00 per day fee and/or any
    marketing losses incurred by Flagstar until package is received. This fee will be charged to the originating
    broker.

    Please use the enclosed Loan Review Department Checklist for proper package order.

    ***PLEASE DO NOT SEND AN INCOMPLETE PACKAGE OR INCLUDE THE CLOSED LOAN PACKAGE WITH
    ANY OTHER SHIPMENTS TO FLAGSTAR***

F.  All recorded documents and the final Title Policy are to be forwarded within 45 business days from closing date
    to: FLAGSTAR BANK, FSB
        5151 CORPORATE DRIVE, TROY, MI 48098
        ATTENTION: FINAL DOCUMENTS - MAIL STOP W-530-3

    Your attention and compliance with these matters will help ensure the smooth closing and funding of this loan.

Closing Agent Signature

V1 MBCD LOAN # 501483999

these items to you. Failure to provide these or any other required items to Flagstar in the settlement package will result in a claim being filed against the title insurance company.

D. The Closing Agent must send the entire disbursement check/wire back to Flagstar Bank immediately. NO EXCEPTIONS. Flagstar's wiring instructions are as follows:

ABA#: 272 471 852
Bank: Flagstar Bank, FSB
Credit to: Flagstar Bank
Credit Acct#: 991555000
Reference: Borrower's name and loan number

E. Recission period, if any, will end on JUNE 25, 2007 close in escrow.    Note: Does not apply for loans that

F. The Disbursement date will be JUNE 26, 2007 in escrow.    Note: Does not apply for loans that close

**SPECIFIC CONDITIONS:**

01. Sign and Date Typed Loan Application
02. Total New House Payment Including Taxes and Insurance Cannot Exceed $(857).
03. If Title Work Shows Any Gas, Oil, or Mineral Rights, Title Company Must Issue a Letter Stating Final Policy Will Insure Over These Rights
04. Flagstar Bank to Have First and Only Lien
05. Title Work to Prove no Delinquent Taxes, Undisclosed Liens, Judgments or Assessments or Approval May Be Null and Void
06. One General Authorization Form
07. All Applicable Riders and Disclosures per Product Descriptions and FNMA/FHLMC Guidelines
08. Each Borrower Must Sign an Individual Three Day Right of Rescission
09. Flood Hazard Notice Zone
10. Any property tax figures that are available at the time of settlement must be paid at closing. Do NOT escrow for these taxes, as they will be due before the loan has been set up on our servicing system.
11. Provide Sale of Servicing Disclosure (DOC No. 3208 or similar document) dated within 3 days of application and signed prior to closing.
12. Acknowledgment of Receipt of Disclosures Form (Doc No.3694) to be executed by all borrowers.
13. This product is eligible for a Short Form Title Policy. Title work should be presented on the proper ALTA short form with commitment at closing.
14. This loan is to be closed on a MERS Security Instrument.
15. This is a cash out refinance.
16. Will Not Waive Three Day Right of Rescission
17. Proof of Pay-off of current mortgage with (Countrywide).
18. Payoff the following collections (MUST SHOW ON THE HUD): Med Busi Bur No.P60854RJV for $9,258, Ill Coll Svc No.4895484 for $488, Med Busi Bur No.P60854ACP for $150, NMSI No.9639197 for $403, Med Busi Bur No.P60854PAA for $406, CDA/Pontiac No.1033604 for $357, Dependon Collection SR No.30814B403011 for $250, Ill Coll Svc No.6125518 for $137. Target $$242
19. Occupancy Affidavit
20. Payoff and close the following: American Family
21. Doc THB Target No.30814 is paid current ($242 past due) OR entire account balance to be paid-off at closing

Closing Agent Signature

FLAGSTAR BANK, FSB
06-20-2007 13:15    Page 4 of 4    W21GCI 0411

## ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

| | |
|---|---|
| Borrower: | CYNTHIA POWELL and ALVIN POWELL |
| Lender: | FLAGSTAR BANK, FSB |
| Settlement Agent: | REGENT TITLE INSURANCE AGENCY, LLC |
| | (312)346-0033 |
| Place of Settlement: | 33 NORTH DEARBORN, SUITE 803 |
| | CHICAGO, IL 60602 |
| Settlement Date: | June 21, 2007 |
| Disbursement Date: | June 26, 2007 |
| Property Location: | 14347 SHERMAN AVE |
| | POSEN, IL 60469 |
| | Cook County, Illinois |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____
CYNTHIA POWELL

_____
ALVIN POWELL

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_____
REGENT TITLE INSURANCE AGENCY, LLC
Settlement Agent

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

# EXHIBIT H

V1 WBCD LOAN # 501483999

**FIRST PAYMENT LETTER**

JUNE 21, 2007
CYNTHIA POWELL
14347 S SHERMAN AVE
POSEN, IL 60469-1026

Dear Mortgagor:

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you is being assigned sold or transferred to  **FLAGSTAR BANK, FSB**
**5151 CORPORATE DRIVE**
**TROY, MI 48098**

The collection of your mortgage payments will be handled by  **FLAGSTAR BANK, FSB**
**5151 CORPORATE DRIVE**
**TROY, MI 48098**

Therefore, effective  **AUGUST 1, 2007**          your payment should be mailed to the address on the payment coupon provided below. Your new loan servicer will mail you a payment coupon in the near future. Your first payment is due **AUGUST 1, 2007.**

The transfer of servicing is an ordinary transaction among mortgage banking companies. It will not affect the terms and conditions of your mortgage in any way. Make sure to reference your loan number at all times.

If you have any questions about the transfer of your mortgage loan, please contact their Customer Service Department (800)968-7700

Yours truly,

CHICAGO REALTY NETWORK
5709 S WENTWORTH
CHICAGO, IL  60621

**CERTIFICATION OF MONTHLY PAYMENT COMPOSITION**

| | |
|---|---|
| Principal and Interest | $656.93 |
| Monthly Amount for Taxes | $5.33 |
| Monthly Amount for Insurance | $51.33 |
| Monthly Amount for Flood | |
| MIP/PMI | |
| | |
| | |
| | |
| **TOTAL MONTHLY PAYMENT** | $713.59 |

---

| MORTGAGE ACCOUNT NO.<br>501483999 | DUE DATE<br>09/01/2007<br>IF NOT RECD. BY<br>09/15/2007 | AMOUNT DUE<br>$713.59<br>PAY THIS AMOUNT<br>$746.44 |
|---|---|---|
| DATE _____<br>CHECK _____<br>CASH _____<br>AMT. _____ | CYNTHIA POWELL<br>ALVIN POWELL<br><br>FLAGSTAR BANK, FSB<br>5151 CORPORATE DRIVE<br>TROY, MI 48098<br>ATTN: PAYMENT PROCESSING<br>MAIL STOP S-125-1 | USE FOR ADDL. AMOUNTS<br>PRINCIPAL<br>OTHER<br>ESCROW<br>TOTAL |

PROPERTY ADDRESS:
14347 S SHERMAN AVE
POSEN, IL 60469-1026

COUPON MUST ACCOMPANY PAYMENT

---

| MORTGAGE ACCOUNT NO.<br>501483999 | DUE DATE<br>08/01/2007<br>IF NOT RECD. BY<br>08/15/2007 | AMOUNT DUE<br>$713.59<br>PAY THIS AMOUNT<br>$746.44 |
|---|---|---|
| DATE _____<br>CHECK _____<br>CASH _____<br>AMT. _____ | CYNTHIA POWELL<br>ALVIN POWELL<br><br>FLAGSTAR BANK, FSB<br>5151 CORPORATE DRIVE<br>TROY, MI 48098<br>ATTN: PAYMENT PROCESSING<br>MAIL STOP S-125-1 | USE FOR ADDL. AMOUNTS<br>PRINCIPAL<br>OTHER<br>ESCROW<br>TOTAL |

PROPERTY ADDRESS:
14347 S SHERMAN AVE
POSEN, IL 60469-1026

COUPON MUST ACCOMPANY PAYMENT

# EXHIBIT I

V1 WBCD LOAN # 501483999

# NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

Borrower Name & Address:
CYNTHIA POWELL
14347 S SHERMAN AVE
POSEN, IL 60469-1026

You are hereby notified* that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from   CHICAGO REALTY NETWORK

to  FLAGSTAR BANK, FSB

effective  AUGUST 1, 2007

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing. [In this case, all necessary information is combined in this one notice.]

Your present servicer is  CHICAGO REALTY NETWORK

If you have any questions relating to the transfer of servicing from your present servicer call  their Servicing Department
at  (800) 968-7700                      between 8:30 AM - 5 PM EST
on the following days: Monday through Friday

This is a toll-free or collect call number.

Your new servicer will be  FLAGSTAR BANK, FSB

The business address for your new servicer is: 5151 CORPORATE DRIVE
                                          TROY, MI 48098

The toll-free or collect call telephone number of your new servicer is  (800)968-7700                      If you have any questions relating to the transfer of servicing to your new servicer call their Servicing Department

at  (800)968-7700                      between 8:30 AM - 5 PM EST
on the following days: Monday through Friday

The date that your present servicer will stop accepting payments from you is AUGUST 1, 2007
The date that your new servicer will start accepting payments from you is AUGUST 1, 2007                      Send
all payments due on or after that date to your new servicer.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. Section 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to this address:
5151 CORPORATE DRIVE
TROY, MI 48098

Not later than 60 Business Days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-Business Day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

V1 WBCD LOAN # 501483999

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

* This notification is a requirement of Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. Section 2605).

CYNTHIA POWELL _____ Date _____

ALVIN POWELL _____ Date _____

# EXHIBIT J

# EDELMAN, COMBS, LATTURNER & GOODWIN, L.L.C.
## 120 S. LaSalle Street, 18th floor
### Chicago, Illinois 60603-3403
### (312) 739-4200
### (800) 644-4673
### (312) 419-0379 (FAX)
### Email: edcombs@aol.com
### www.edcombs.com

August 21, 2007

**CERTIFIED AND REGULAR MAIL**

Flagstar Bank FSB
5151 Corporate Drive
MS E-375-3
Troy, MI 48098

Chicago Realty Network, LLC
5709 S. Wentworth
Chicago, IL 60621

Mortgage Electronic Registration Systems, Inc.
c/o registered agent
CT Corporation System
208 S. LaSalle St., Suite 814
Chicago, IL 60604

Re:    Notice of rescission, claim and lien, Mr. and Mrs. Alvin Powell,
14347 S. Sherman, Posen, IL 60469, loan of June 2007

Ladies/ Gentlemen:

The above clients hereby give notice that they rescind the above loan for noncompliance with the Truth in Lending Act.

Please be further advised that we have been retained by the above clients to file suit against you and that we claim a lien upon said recovery for 1/3 or such amount as a court awards.

If you claim that the owner of the loan is other than one of you, please identify the owner pursuant to 15 U.S.C. §1641(d).

Finally, please provide an account history so that we may compute the appropriate

amount to be tendered.

Sincerely,

Daniel A. Edelman

cc: clients

T:\20061\Correspondence\rescission demand_Correspondence.wpd

2

I, Daniel A. Edelman, under penalty of perjury, as provided for by 28 U.S.C. §1746, certify that I had a copy of the foregoing document sent to the addressees on August 21, 2007.

_____
Daniel A. Edelman

3

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _Romeo Person_    ☐ Agent ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

AUG 23 2007

1. Article Addressed to:

**Flagstar Bank FSB**
**5151 Corporate Drive**
**MS E-375-3**
**Troy, MI 48098**

3. Service Type    USPS
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered    ☑ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7004 0550 0001 1677 9222

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____    ☐ Agent ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

**Chicago Realty Network, LLC**
**5709 S. Wentworth**
**Chicago, IL 60621**

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered    ☑ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7004 0550 0001 1677 9215

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____    ☐ Agent ☐ Addressee

B. Received by (Printed Name)

D. Is delivery address different from item 1?  ☐ Yes
   delivery address  ☐ No

RECEIVED
AUG 23 2007
CT SOP DEPT

1. Article Addressed to:

**Mortgage Electronic Registration Systems, Inc.**
**c/o registered agent**
**CT Corporation System**
**208 S. LaSalle St., Suite 814**
**Chicago, IL 60604**

☐ Express Mail
☑ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7004 0550 0001 1677 9239

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

# EXHIBIT K

Case 1:07-cv-06594    Document 1    Filed 11/21/2007    Page 67 of 68

## TITLE INSURANCE COMPANIES LICENSED IN ILLINOIS

American Guaranty Title Insurance Company
400 Second Avenue South
Minneapolis, MN 55401-2499
(612) 371-1111
(800) 328-4441

Attorneys' Title Guaranty Fund, Inc.
2102 Windsor Place
Savoy, IL 61874
(217) 359-2000
In Illinois: (800) 252-0402

Chicago Title Insurance Company
171 N. Clark Street, MLC-08RS
Chicago, IL 60601-3294
(312) 223-2000
(800) 621-1919

Chicago Title & Trust Company
171 N. Clark Street, MLC-08RS
Chicago, IL 60601-3294
(312) 223-2000
(800) 621-1919

Commerce Title Insurance Company
2828 N. Harwood Street, 11th Floor
Dallas, TX 75201
(214) 758-7912

Commonwealth Land Title Insurance Co.
5600 Cox Road
Glen Allen, VA 23060
(804) 267-8000

Fidelity National Title Insurance Company
1901 N. Roselle Road, Suite 650
Schaumburg, IL 60195
(800) 250-9271
(847) 839-9034

Old Republic National Title Insurance Co.
400 Second Avenue South

First American Title Insurance Company
1 First American Way, PO Box 267
Santa Ana, CA 92707
(714) 800-3382
(800) 854-3643

Investors Title Insurance Company
121 N. Columbia Street
Chapel Hill, NC 27514
(919) 968-2200
(800) 326-4842

Lawyers Title Insurance Corporation
5600 Cox Road
Glen Allen, VA 23060
(804) 267-8000

National Land Title Insurance Company
2800 W. Higgins Road, Suite 835
Hoffman Estates, IL 60195
(847) 885-3000

National Title Insurance of New York, Inc.
601 Riverside Avenue
Jacksonville, FL 32204
(904) 854-8997

Nations Title Insurance of New York, Inc.
601 Riverside Avenue
Jacksonville, FL 32204
(904) 854-8997

North American Title Insurance Company
1855 Gateway Boulevard, Suite 600
Concord, CA 94596
(925) 935-5599

Title Insurance Company of America
5600 Cox Road

Case 1:07-cv-06594   Document 1   Filed 11/21/2007

Minneapolis, MN  55401-2499
(612) 371-1111
(800) 328-4441

Pacific Northwest Title Insurance Co., Inc.
215 Columbia Street
Seattle, WA  98104
(206) 343-1324

Security Union Title Insurance Company
171 N. Clark Street, MLC-08RS
Chicago, IL  60601-3294
(312) 223-2000
(800) 621-1919

Stewart Title Guaranty Company
1980 Post Oak Boulevard, PO Box 2029
Houston, TX  77252-2029
(713) 625-8100
(800) 729-1900

The Florida Fund
6545 Corporate Centre Boulevard
Orlando, FL  62822
(407) 240-3863

The Guaranty Title & Trust Company
8280 Montgomery Road, Suite 200
Cincinnati, OH  45236
(513) 794-4020
(800) 877-4882

Ticor Title Insurance Company
171 N. Clark Street, MLC-08RS
Chicago, IL  60601-3294
(312) 223-2000
(800) 621-1919

Ticor Title Insurance Company of Florida
601 Riverside Avenue
Jacksonville, FL  32204
(904) 854-8997

Glen Allen, VA  23060
(804) 267-8000

Transnation Title Insurance Company
5600 Cox Road
Glen Allen, VA  23060
(804) 267-8000

TransUnion National Title Insurance Co.
2711 Middleburg Drive, Suite 113
Columbia, SC  29204
(803) 799-4747

United General Title Insurance Company
8310 South Valley Highway, Suite 130
Englewood, CO  80112
(720) 264-8700
(800) 999-3470