IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALVIN POWELL and CYNTHIA POWELL, | ) | |
| | ) | |
| Plaintiffs, | ) | 07 C 6594 |
| | ) | |
| v. | ) | Judge Leinenweber |
| | ) | |
| FLAGSTAR BANK, FSB, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., REGENT TITLE INSURANCE AGENCY, LLC, CHICAGO REALTY NETWORK, LLC, and MATRICIA J. JACKSON, an individual | ) ) ) ) ) ) | Magistrate Judge Denlow |
| Defendants. | ) | |

**DEFENDANT CHICAGO REALTY NETWORK, LLC'S
ANSWER TO PLAINTIFFS' COMPLAINT**

NOW COMES Defendant, CHICAGO REALTY NETWORK, LLC, ("CRN" and/or "Defendant") by and through its attorney, Edward W. Williams, and as and for its Answer to Plaintiffs Alvin Powell and Cynthia Powell's (combined "Plaintiff's" and/or "Powells") Complaint, states as follows:

1. Plaintiff's Alvin Powell and Cynthia Powell bring this action against a mortgage lender and its affiliates to rescind a mortgage for violation of: (A) the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226; (B) the Illinois Title Insurance Act, 215 ILCS § 155/1; and (C) the Illinois Consumer Fraud Act, 815 ILCS § 505/2.

**ANSWER**:   CRN admits Plaintiffs have filed this Complaint and claim to bring it pursuant to (A) the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), and implementing Federal

1

Reserve Board Regulation Z, 12 C.F.R. part 226; (B) the Illinois Title Insurance Act, 215 ILCS § 155/1; and (C) the Illinois Consumer Fraud Act, 815 ILCS § 505/2, but CRN denies any legal conclusion that may arise from this allegation and further deny any liability that may arise from these allegations.

2. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. § 1640 (TILA). Defendants transact business in District and are deemed to reside here.

**ANSWER**:    Admit.

3. Plaintiffs Alvin Powell and Cynthia Powell ("the Powells") are husband and wife and jointly own and reside in a home at 14347 S. Sherman Avenue, Posen, Illinois 60469.

**ANSWER:**    CRN lacks sufficient information to either admit or deny the allegations in paragraph 3 and therefore denies the same.

4. Defendant Flagstar Bank, FSB ("Flagstar") is a bank which does business in Illinois, including maintaining a loan center in Gurnee, Illinois. Its business address is 5151 Corporate Drive, Troy, MI 48098.

**ANSWER**:    CRN lacks sufficient information to either admit or deny the allegations in paragraph 4 and therefore denies the same.

5. Flagstar is the assignee and current holder of the Powells' loan and is listed as the lender on some of the Powells' loan documents.

**ANSWER**:    Admit.

6. Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation doing business in Illinois. Its registered agent and office are CT Corporation

System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

**ANSWER**:     CRN lacks sufficient information to either admit or deny the allegations in paragraph 6 and therefore denies the same.

7.     MERS is the mortgagee under the Powells' mortgage.

**ANSWER**:     CRN lacks sufficient information to either admit or deny the allegations as specifically set forth in paragraph 7 and therefore denies the same.

8.     Defendant Regent Title Insurance Agency, LLC ("Regent") is an Illinois limited liability company. Its business address is 33 N. Dearborn, Suite 803, Chicago, IL 60602. Its registered agent and office are Michael S. Roberts, 55 W. Monroe, Suite 1700, Chicago, IL 60603.

**ANSWER**:     CRN lacks sufficient information to either admit or deny the allegations in paragraph 8 and therefore denies the same.

9.     Regent acted as the closing agent for the Powells' mortgage and as agent for Ticor Title Insurance Company in regard to the sale of title insurance to the Powells.

**ANSWER**:     CRN admits that Regent acted as the closing agent for a mortgage taken by the Powell's for which CRN acted as the mortgage broker.

10.     Defendant Chicago Realty Network - Real Estate, LLC ("Chicago Realty") is an Illinois limited liability company. Its business address is 5707-5711 S. Wentworth, Chicago, IL 60621. Its registered agent and office are Susan Meyer, 180 N. LaSalle Street, Suite 2700, Chicago, IL 60601.

**ANSWER**:     Admit.

11.     Chicago Realty was the broker for the Powells' loan and the original lender pursuant to

the mortgage, the note, and the settlement statements signed by the Powells.

**ANSWER**: Insofar as paragraph 11 references legal documents which are not attached or referenced to this paragraph, CRN lacks sufficient information to either admit or deny the allegations in paragraph 11 and therefore denies the same. Further answering, CRN denies it was the original lender and admits it did act as a broker for a loan for the Powells which closed on June 21, 2007. CRN was not present at the closing. CRN denies the remaining allegations.

12. Chicago Realty is a "creditor" as defined in TILA and Regulation Z.

**ANSWER**: Plaintiffs in Paragraph 12 seek a legal conclusion as an answer, and therefore CRN denies paragraph 12.

13. Defendant Matricia J. Jackson ("Jackson") is a representative of Chicago Realty and holds Illinois licenses as a both a Licensed Real Estate Salesperson and a Loan Originator (license number 031.0022223). On information and belief, she may be found in Cook County, Illinois, at 14414 Minerva Avenue, Dolton 60419.

**ANSWER**: CRN admits Jackson is a representative of CRN and that she holds an Illinois Real Estate Salesperson's license and an Illinois Loan Originator's license. However, Jackson does not reside at 14414 Minerva Avenue, Dolton 60419.

14. On or around April 26, 2007, plaintiffs applied for a mortgage through Chicago Realty.

**ANSWER**: CRN admits plaintiffs applied for a mortgage through CRN but lack sufficient information to either admit or deny the remaining allegations, and therefore deny the same.

15. Their contact at Chicago Realty was Jackson and they spoke to her many times by telephone and also relayed information to her through her husband, Jeffrey Jackson.

**ANSWER**: CRN admits Jackson was the main contact person from CRN with the Powells

and that she did speak many times about the loan with the Powells by telephone. CRN denies that Jackson discussed the loan with the Powells through her husband, other than to discuss the initial desire of the Powells to refinance their home; the Powells mentioned to Jackson's husband they would be interested in refinancing and wanted to discuss this with Matricia Jackson.

16. Jackson signed a document as "Loan Originator" with the Powells entitled "Mortgage Broker Fee Agreement and Disclosure" on April 26, 2007; however, Jackson did not become licensed as a Loan Originator until May 24, 2007 according to the State of Illinois Division of Banking website.

**ANSWER**: CRN objects to the first clause of this sentence as it is vague and ambiguous as to what document is being referenced and as no document attachment is referenced. To that extent, CRN answers that the document would speak for itself. CRN admits the second clause of this sentence. CRN denies all legal conclusions that may arise from this paragraph.

17. Plaintiffs needed and used the loan for personal, family or household purposes, named, refinancing of prior debt incurred for such purposes.

**ANSWER**: CRN lacks sufficient information to either admit or deny the reasons for which Plaintiffs needed and used the loan, and therefore denies paragraph 17.

18. The Powells had rejected a previous loan offer because the loan officer had told them they had to pay a more than $9,258 disputed debt out of the proceeds of the loan as a condition of the deal.

**ANSWER**: CRN lacks sufficient information to either admit or deny the allegations in paragraph 18 and therefore denies the same.

19. At the time the Powells signed the loan application with Chicago Realty, they told

Jackson they would not take the loan if they had to pay the $9,258 disputed debt. Mr. Powell reiterated this during a phone conversation that took place on June 19, 2007 at around 2:20 p.m., in front of witnesses. Both times, Jackson assured the Powells everything was fine.

**ANSWER**:  To the extent that this paragraph is directed directly to a conversation between the plaintiffs and Jackson, a party to this litigation, it is not directed to CRN and therefore no answer is required at this time. To the extent an answer is required, CRN lacks sufficient information to either admit or deny the allegations of paragraph 19 and therefore denies the same.

20. Before the closing, the Powells provided Jackson with documentation on their property taxes, which came to approximately $1,600 per year.

**ANSWER**:  Admit.

21. Before the closing, the Powells provided Jackson with information on the maximum monthly payment they could make, namely $750.

**ANSWER**:  CRN denies the allegations in paragraph 21.

22. The loan was closed on June 21, 2007 at the Powells' home.

**ANSWER**:  CRN admits the loan was closed on June 21, 2007 and CRN believes it was done at the Powells' home, but deny that they were present at the closing.

23. The following are documents relating to the loan:
   (1)  A note, Exhibit A;
   (2)  A mortgage, Exhibit B;
   (3)  Two different settlement statements, Exhibits C- D, only one of which (Exh. C) plaintiffs received and signed at the closing;
   (4)  A Truth in Lending statement, Exhibit E;
   (5)  The three-day notice of right to cancel required by the Federal Reserve Board, Exhibit F;

**ANSWER**:   (1) CRN answers that the document attached as Exhibit A speaks for itself; (2) CRN answers that the document attached as Exhibit B speaks for itself; (3) CRN answers that the documents attached as Exhibit C and D speak for themselves, but answer that as set forth in the Complaint as filed, Exhibit C is a draft settlement statement relating to the loan and is not signed by the Powells and that Exhibit D is a final copy of a settlement statement related to the loan that is signed and acknowledged by the Powells and provides $41,426.52 to the Borrower. According to the exhibits, it appears that only Exhibit D was signed at the closing, and not Exhibit C. CRN was not present at the closing. (4) CRN answers that the document attached as Exhibit E speaks for itself; and (5) CRN answers that the document attached as Exhibit F speaks for itself.

24.   The reason for two different settlement statements appears to be that the disbursements and other terms of the transaction were changed after the closing. The settlement statement signed by the Powells on June 21, 2007 (Exh. C), shows the Powells would receive $53,117.52 our of the loan proceeds (Exh. C, line 30). The second settlement statement (Exh. D), faxed to the Powells' counsel on June 28, 2007 by Regent, shows $11,711.00 of unauthorized disbursements, some of which were for debts that had been discharged in bankruptcy or otherwise satisfied. The Powells received $41,406.52 cash back on June 27, 2007 (Exh. D, line 303).

**ANSWER**:   CRN denies the allegations in paragraph 24. Further answering, CRN answers that the documents speak for themselves.

25.   Attached as Exhibit G is the June 28, 2007 fax, which includes the second settlement statement that was sent to plaintiffs' counsel along with the closing instructions and a summary of additional disbursements. Plaintiffs had not seen any of these documents,

including the version of the settlement statement saying they would received only $41,406.52, before Regent faxed them to the Powells' counsel on June 28, 2007.

**ANSWER**: CRN answers that the document attached as Exhibit G to the Complaint speaks for itself. Further, CRN notes that it does not see any proof of facsimile transmission on the document attached as Exhibit G to the Complaint. Further answering, CRN lacks sufficient information to either admit or deny the remaining allegations in paragraph 25 and therefore denies the same.

26. The settlement statement that was given to plaintiffs at closing indicates settlement charges of $3,761.90 (Exh. C, line 103), whereas the settlement statement faxed to plaintiff later has settlement charges of $13,657.90 and additional disbursements of $1,795/ (Exh. D, lines 103 and 112).

**ANSWER**: CRN lacks sufficient information to either admit or deny the remaining allegations in paragraph 26 and therefore denies the same. Further, CRN was not present at the closing.

27. After the closing, the Powells received documents telling them that their payment, including escrow, would increase to more than $750, the maximum they had told Jackson they could afford. They then discovered that their loan documents showed a monthly tax liability of only $5.33 (or $63.96 annually), whereas their tax liability was actually around $1,600 a year (see Exhibit H, a "first Payment Letter" issued to the clients on June 21, 2007).

**ANSWER**: CRN was not present at the closing, and therefore lacks sufficient information to either admit or deny what documents the Powells received at the closing, and therefore denies the allegations in paragraph 27.CRN denies all remaining allegations of paragraph 27 and further

denies all legal conclusions that may arise from this paragraph.

28. Plaintiffs did not receive the second settlement statement until after the end of the TILA rescission period, and they did not receive new 3-day notices allowing them to rescind the loan under the terms disclosed on the second settlement statement.

**ANSWER**: CRN lacks sufficient information to either admit or deny what documents the Plaintiffs received at or after the closing, and therefore denies the allegations of paragraph 28. CRN further denies any legal conclusions that may arise from the allegations of paragraph 28.

29. Plaintiff Alvin Powell called Jackson and Regent to protest the unauthorized payoffs and to try to get the cash he had been promised at the closing. When Regent mailed the checks to the Powells for disbursement, the Powells returned them on or around August 9, 2007 to Regent by certified mail with a letter of protest that explained that the payments were unauthorized and the reasons certain payments were disputed or barred. They did not hear from Regent after that and do not know what happened to the $11,711.00 they returned.

**ANSWER**: To the extent that the first sentence of this paragraph is directed directly to a conversation between the plaintiffs and Jackson and Regent, both parties to this litigation, it is not directed to CRN and therefore no answer is required at this time. To the extent an answer is required, CRN lacks sufficient information to either admit or deny the allegations of the first sentence of paragraph 29 and therefore denies the same. In addition, CRN was not present at the closing and therefore lacks sufficient information to either admit or deny what promises Regent made to the Powell's at the closing, and therefore can not properly answer this allegation and to the extent necessary, denies the same. Further answering, CRN lacks sufficient information to either admit or deny whether when Regent mailed the checks to the Powells for disbursement,

that the Powells returned them on or around August 9, 2007 to Regent by certified mail with a letter of protest that explained that the payments were unauthorized and the reasons certain payments were disputed or barred, and therefore CRN denies this allegation. CRN further lacks sufficient information to either admit or deny whether the Powells did not hear from Regent after that and do not know what happened to the $11,711.00 they returned, and therefore deny the allegations.

30. Chicago Realty received a yield spread premium of more than $1,500.00 in exchange for increasing the interest rate on plaintiffs' loan. Chicago Realty was the original lender, selling or assigning the loan to Flagstar on August 1, 2007 (Exhibit I). It also received fees amounting to almost $2,000.00

**ANSWER**: CRN admits it received a yield spread premium of $1,540.00, but denies the remaining allegations and legal conclusions of the first sentence of paragraph 30. Further, CRN denies it was the original lender. CRN denies it sold the loan to Flagstar. CRN denies it assigned the loan to Flagstar on August 1, 2007. CRN answers that Exhibit I speaks for itself but that it was not present at the closing and was not tendered a copy of this document prior to receipt of this Complaint. CRN admits it received $1,995 in fees.

### RIGHT TO RESCIND

### COUNT I - TRUTH IN LENDING ACT

31. Plaintiffs incorporate paragraphs 1 - 30.

**ANSWER**: CRN incorporates and restates its answers to paragraphs 1 - 30 as if fully stated herein in Count I.

32. This claim is against Flagstar, MERS, and Chicago Realty.

**ANSWER**: CRN admits Plaintiffs have set forth the allegations of Count I against Flagstar, MERS, and Chicago Realty but denies any legal conclusions that may arise from this paragraph.

33. In order to give consumer borrowers the opportunity to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or three days of receiving notice of their right to rescind, whichever is later. More specifically, the statute, provides that:

> Except as otherwise provided in this section, in the case of any consumer credit transaction... in which a security interest ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. (15 U.S.C. § 1635(a)).

**ANSWER**: Plaintiffs in Paragraph 33 seek a legal conclusion as an answer, and therefore CRN denies paragraph 33.

34. To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

> When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interested arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money,

downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. (15 U.S.C. § 1635(b).)

**ANSWER**: Plaintiffs in Paragraph 34 seek a legal conclusion as an answer, and therefore CRN denies paragraph 34.

35  To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section. (15 U.S.C. 1635(a).)

**ANSWER**: Plaintiffs in Paragraph 35 seek a legal conclusion as an answer, and therefore CRN denies paragraph 35.

36.  Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. The regulation restates the statutory rescission right, 12 C.F.R. § 226.23(a), and requires that the creditor "deliver" to each person entitled to rescind "two copies" of a document that "clearly and conspicuously disclose" 12 C.F.R. § 226.23(b)(1) the borrower's rescission rights.

**ANSWER**: Plaintiffs in Paragraph 36 seek a legal conclusion as an answer, and therefore CRN denies paragraph 36.

37.  More specifically, the regulation provides:

> In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the rights to rescind each consumer entitled to rescind (one copy to each

> if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:
> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.
> (ii) The consumer's right to rescind the transaction.
> (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.
> (iv) The effects rescission, as described in paragraph (d) of this section.
> (v) The date the rescission period expires. (12 C.F.R. § 226.36(b)(1).)

**ANSWER**: Plaintiffs in Paragraph 37 seek a legal conclusion as an answer, and therefore CRN denies paragraph 37.

38. In connection with the plaintiffs' loan, Chicago Realty and/or Flagstar failed to provide the required disclosures of the plaintiffs' right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. §226.23, and failed to provide the required financial disclosures, in violation of 15 U.S.C. §1638 and 12 C.F.R. §226.18, for (without limitation) the reasons stated below.

**ANSWER**: CRN answers paragraphs 38 as if directed only to CRN, as it cannot answer for Flagstar. CRN denies the allegations in paragraph 38. CRN was not present at the closing and denies it failed to produce required disclosures. Further, to the extent paragraph 38 seeks legal conclusions as answers, CRN denies the legal conclusions.

39. The documents are dated as if the transaction was consummated on June 21, 2007, after which the terms of the transaction changed.

**ANSWER**: To the extent Plaintiffs in Paragraph 39 seek a legal conclusion as an answer, CRN denies paragraph 39. Further, CRN answers that the documents speak for themselves.

40. In fact, the loan was never been properly consummated, since plaintiffs did not sign the

version of the settlement statement providing for $11,711.00 in disbursements to creditors and a cash payment of only $41,406.52.

**ANSWER**:   Plaintiffs in Paragraph 40 seek a legal conclusion as an answer, therefore CRN denies paragraph 40. Further, CRN answers that it was not present at the closing and that the documents speak for themselves.

41.   The documents do not reflect the actual terms of the transaction.

**ANSWER**:   Plaintiffs in Paragraph 41 seek a legal conclusion as an answer, therefore CRN denies paragraph 41. Further, CRN answers that it was not present at the closing and that the documents speak for themselves.

42.   The Powells' sent a letter to Flagstar requesting rescission on or around August 6, 2007. Additionally, counsel for the Powells sent notice of rescission to Chicago Realty, MERS, and Flagstar on August 21, 2007. A copy of counsel's letter is attached as Exhibit J.

**ANSWER**:   CRN never received an August 6, 2007 letter that was sent to Flagstar and therefore lacks sufficient information to either admit or deny the allegations of the first sentence of paragraph 42 of the Complaint, and denies the same. CRN admits it received an August 21, 2007 letter sent from counsel for the Powell's, a copy of which is attached to the Complaint as Exhibit J. CRN denies any legal conclusions that may arise from the allegations of paragraph 42.

43.   The loan has not been rescinded.

**ANSWER**:   Admit.

44.   Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

**ANSWER**:   Plaintiffs in Paragraph 44 seek a legal conclusion as an answer, therefore CRN denies paragraph 44.

45.   15 U.S.C. §1635(g) provides:

> Additional relief
> In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.

**ANSWER**:   Plaintiffs in Paragraph 45 seek a legal conclusion as an answer, therefore CRN denies paragraph 45.

WHEREFORE, Chicago Realty Network respectfully answers Count I of the Complaint and moves this Honorable Court to dismiss Count I and grant any other relief it deems fair and equitable.

### COUNT II - ILLINOIS TITLE INSURANCE ACT

46 - 57:   This Count II is directed only toward Regent, and therefore no answer is required by CRN. To the extent any answer is deemed necessary, CRN denies the allegations of paragraphs 46 - 57, demands strict proof thereof and moves the Court to dismiss this Count.

### COUNT III - ILLINOIS CONSUMER FRAUD ACT

58.   Plaintiffs incorporate paragraphs 1 - 57. This claim is against defendants Regent, Chicago Realty, and Jackson.

**ANSWER**:   CRN incorporates and restates its answers to paragraphs 1 - 57 as if fully stated herein in Count III.

59.   Defendants engaged in unfair and deceptive acts and practices, in violation of § 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by promising at closing to give plaintiffs

$53,117.52 and then sending plaintiffs only $41,406.52, by providing false documents for the plaintiffs' signature at closing, and by misrepresenting plaintiffs' property tax liability and the total monthly payment on the loan.

**ANSWER**:   CRN denies the allegations in paragraph 59.

60.   Regent, Chicago Realty, and Jackson engaged in such practices in the course of trade and commerce, namely a residential loan transaction.

**ANSWER**:   CRN objects to the allegation in paragraph 60 as it is vague and ambiguous and therefore no answer can be provided. To the extent an answer is required, CRN denies the allegations in paragraph 60.

61.   Regent, Chicago Realty, and Jackson engaged in practices for the purposes of inducing reliance on the part of plaintiffs to enter into the disadvantageous transaction, namely a loan with higher monthly payments than they could afford and with a significantly lower cash payout than expected.

**ANSWER**:   CRN denies the allegations in paragraphs 61.

62.   Plaintiffs did, in fact, rely on Regent, Chicago Realty, and Jackson's promises by entering into a loan under terms that they would have rejected had they known about them.

**ANSWER**:   CRN denies the allegations in paragraphs 62.

63.   Plaintiffs were damages as a result. Specifically, they received $11,711.00 less cash than expected, they are paying a higher monthly payment that disclosed, and they are paying interest on $11,711.00 that remains undisbursed.

**ANSWER**:   CRN denies the allegations in paragraphs 63.

64.   Regent, Chicago Realty, and Jackson's conduct was intentionally deceptive and

malicious. The plaintiffs took care to disclose and confirm material terms of the loan before signing the loan documents only to discover that second settlement statement had been substituted by one of the defendants after closing. Mr. Powell is on disability and he and his wife have suffered considerable emotional anguish over this loan. Substantial punitive damages are warranted.

**ANSWER**:   CRN admits that Mr. Powell is on disability. CRN denies all remaining allegations of paragraph 64.

WHEREFORE, Chicago Realty Network respectfully answers Count III of the Complaint and moves this Honorable Court to dismiss Count III and grant any other relief it deems fair and equitable.

> Respectfully submitted,
> CHICAGO REALTY NETWORK, LLC
> By and through one of its attorneys,
>
> s/Edward W. Williams
> Edward W. Williams

EDWARD W. WILLIAMS
EDWARD W. WILLIAMS, LTD.
205 West Wacker Drive, Suite 1220
Chicago, IL 60606
312/335-9470 Telephone
312/335-9482 Facsimile
Illinois ARDC # 6191341