IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALVIN POWELL and CYNTHIA POWELL, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case no.:  07 C 6594 |
| | ) |
| FLAGSTAR BANK, FSB, MORTGAGE | ) |
| ELECTRONIC REGISTRATION SYSTEMS, | ) |
| INC., REGENT TITLE INSURANCE | ) |
| AGENCY, LLC, CHICAGO REALTY | ) |
| NETWORK, LLC, AND MATRICIA J. | ) |
| JACKSON, an individual | ) |
| | ) |
| Defendants. | ) |

ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

NOW COMES the defendant, REGENT TITLE INSURANCE AGENCY, LLC, ("Regent") by its lawyer, PETER S. STAMATIS, and for its Answer to plaintiff's Complaint, states as follows:

INTRODUCTION

1.   Plaintiffs Alvin Powell and Cynthia Powell bring this action against a mortgage lender and its affiliates to rescind a mortgage for violation of: (A) the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226; (B) the Illinois Title Insurance Act, 215 ILCS § 155/1; and (C) the Illinois Consumer Fraud Act, 815 ILCS § 505/2.

ANSWER:   Regent denies it is the affiliate of Flagstar Bank, Mortgage Electronic Registration Systems, or any other defendant herein.  Regent further states that the instant complaint speaks for itself and accordingly denies plaintiff's characterization of it in this paragraph.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA). Defendants transact business in the District and are deemed to reside here.

ANSWER: Objection. This allegation is a legal conclusion to which no answer is required. Answering further, Regent believes that this Honorable Court may possess subject matter jurisdiction over the claim asserted in Count I against defendants Flagstar, MERS and Chicago Realty only, pursuant to the Federal Truth in Lending Act, as Count I appears to be brought pursuant to 15 USCA 1601. Regent denies that this Court has subject matter jurisdiction over Counts II and III, both counts which bring claims brought exclusively under Illinois statutes, namely the Illinois Title Insurance Act, and the Illinois Consumer Fraud and Deceptive Practices Act respectively. Regent states, however, that this Honorable Court, at its discretion, may have "Supplemental Jurisdiction" over Regent pursuant to 28 USCA §1367(a) to the extent that Counts II and III are "so related" to Count I that they "form part of the same case or controversy under Article III of the United States Constitution." Such is a determination for this Honorable Court. Regent futher states that in the event that Count I is dismissed, voluntarily or otherwise, then such supplemental jurisdiction, if it exists at all, would end.

3. Plaintiffs Alvin Powell and Cynthia Powell ("the Powells") are husband and wife and jointly own and reside in a home at 14347 S. Sherman Avenue, Posen, Illinois 60469.

ANSWER: Regent lacks sufficient knowledge to admit or deny the allegations contained in this paragraph.

4. Defendant Flagstar Rank, FSB ("Flagstar") is a bank which does business in Illinois, including maintaining a loan center in Gurnee, Illinois. Its business address is 5151 Corporate Drive, Troy, MI 48098.

ANSWER: Regent admits Flagstar Bank does business in Illinois but lacks sufficient knowledge to admit or deny the remaining allegations contained in this paragraph.

5. Flagstar is the assignee and current holder of the Powells' loan and is listed as the lender on some of the Powells' loan documents.

ANSWER: Regent objects to this allegation in that the phrases "current holder," "Powell's loan" and "loan documents" are vague and undefined. Accordingly, Regent lacks sufficient knowledge to admit or deny the allegations contained in this paragraph.

6. Defendant Mortgage Electronic Registration Systems, Inc. ("'MERS") is a Delaware corporation doing business in Illinois. Its registered agent and office are CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

ANSWER: Regent lacks sufficient knowledge to admit or deny the allegations contained in this paragraph.

7. MERS is the mortgagee under the Powells' mortgage.

ANSWER: Regent objects to this allegation in that the phrase "mortgagee under the Powells' mortgage" is vague and undefined. Accordingly, Regent lacks sufficient knowledge to admit or deny the allegations contained in this paragraph.

8. Defendant Regent Title Insurance Agency, LLC ("Regent") is an Illinois limited liability company. Its business address is 33 N. Dearborn, Suite 803,

3

Chicago, Illinois 60602. Its registered agent and office are Michael S. Roberts, 55 W. Monroe, Suite 1700, Chicago, IL 60603.

ANSWER: Regent admits the allegations contained in this paragraph.

9. Regent acted as the closing agent for the Powells' mortgage and as agent for Ticor Title Insurance Company in regard to the sale of title insurance to the Powells.

ANSWER: Regent admits that on June 21, 2007, it acted as the settlement agent on loan number 501483999 from Flagstar Bank FSB to the Powells. Answering further, Regent states that the phrases "Powells' mortgage" and "sale of title insurance" are vague and undefined and for that reason, Regent denies the remaining allegations contained in this paragraph.

10. Defendant Chicago Realty Network - Real Estate, LLC ("Chicago Realty") is an Illinois limited liability company. Its business address is 5707-5711 S. Wentworth, Chicago, IL 60621. Its registered agent and office are Susan Meyer, 180 N. LaSalle Street, Suite 2700, Chicago, IL 60601.

ANSWER: Regent lacks sufficient knowledge to admit or deny the allegations contained in this paragraph.

11. Chicago Realty was the broker for the Powells' loan and the original lender pursuant to the mortgage, the note, and the settlement statement signed by the Powells.

ANSWER: Regent objects to this allegation in that the terms "Powells' loan," "the mortgage," "the note," and the "settlement statement" are vague and undefined. Accordingly, Regent lacks sufficient information to admit or deny the allegations contained in this paragraph.

12. Chicago Realty is a "creditor" as defined in TILA and Regulation Z.

ANSWER: The allegations contained in this paragraph are legal conclusions to which no answer is required.

13. Defendant Matricia J. Jackson ("Jackson") is a representative of Chicago Really and holds Illinois Licenses as a both a Licensed Real Estate Salesperson and a Loan Originator (license number 031.0022223). On information and belief, she may be found in Cook County, Illinois, at 14414 Minerva Avenue, Dolton, Illinois 60419.

ANSWER: Regent lacks sufficient knowledge to admit or deny the allegations contained in this paragraph.

## FACTS RELATING TO THE PLAINTIFFS

14. On or around April 26, 2007, plaintiffs applied for a mortgage though Chicago Realty.

ANSWER: Regent lacks sufficient knowledge to admit or deny the allegations contained in this paragraph.

15. Their contact at Chicago Realty was Jackson and they spoke to her many times by telephone and also relayed information to her through her husband, Jeffery Jackson.

ANSWER: Regent lacks sufficient knowledge to admit or deny the allegations contained in this paragraph.

16. Jackson signed a document as "Loan Originator" with the Powells entitled "Mortgage Broker Fee Agreement and Disclosure" on April 26, 2007; however, Jackson did not become licensed as a Loan Originator until May 24, 2007 according to the State of Illinois Division of Banking website.

ANSWER: Regent lacks sufficient knowledge to admit or deny the allegations contained in this paragraph.

17. Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes

5

ANSWER: Regent lacks sufficient knowledge to admit or deny the allegations contained in this paragraph.

18. The Powells had rejected a previous loan offer because the loan officer had told them they had to pay a more than $9258 disputed debt out of the proceeds of the loan as a condition of the deal.

ANSWER: Regent lacks sufficient knowledge to admit or deny the allegations contained in this paragraph.

19. At the time the Powells signed the loan application with Chicago Realty, they told Jackson that they would not take the loan if they had to pay the $9,258 disputed debt. Mr. Powell reiterated this during a phone conversation that took place on June 19, 2007 at around 2:20 p.m. in front of witnesses. Both times, Jackson assured the Powells everything was fine.

ANSWER: Regent lacks sufficient knowledge to admit or deny the allegations contained in this paragraph.

20. Before the closing, the Powells provided Jackson with documentation on their property taxes, which came to approximately $1,600 per year.

ANSWER: Regent lacks sufficient knowledge to admit or deny the allegations contained in this paragraph.

21. Before the closing, the Powells provided Jackson with information on the maximum monthly payment they could make, namely $750.

ANSWER: Regent lacks sufficient knowledge to admit or deny the allegations contained in this paragraph.

22. The loan was closed on June 21, 2007 at the Powells' home.

ANSWER: Regent objects to this allegation as the phrase "the loan" is not defined and for that reason, Regent lacks sufficient information to admit or deny the allegations as pled. Answering further and without waiving said objection,

Regent states that on June 21, 2007, Regent acted as the settlement agent on a loan for $100,000 from Flagstar Bank FSB to the Powells. Regent admits that one of its closers, Paul Koutnik, traveled to the Powell's home to conduct the closing on the loan. Regent states that such loan was secured by a mortgage on the Powell's home.

    23.    The following are documents relating to the loan:

(1)    A note, <u>Exhibit A</u>;

(2)    A mortgage, <u>Exhibit B</u>;

(3)    Two different settlement statements, <u>Exhibits C-D</u>, only one of which (Exh. C) plaintiffs received and signed at the closing;

(4)    A Truth in Lending statement, <u>Exhibit E</u>;

(5)    The three-day notice of right to cancel required by the Federal Reserve Board, <u>Exhibit F</u>;

ANSWER: Regent objects to these allegations as the terms "the loan" and "relating to" and "the loan" are never defined making the allegation so vague as to preclude an answer. Answering further and without waiving said objection, Regent states that on June 21, 2007, Regent acted as the settlement agent on a loan from Flagstar Bank FSB to the Powells with the loan number 501483999. ("Loan #501483999"). To the extent that plaintiff is referring to Loan #501483999, Regent states that the documents set forth in sub-paragraphs (1) – (5) all of which are unsigned, speak for themselves and accordingly, Regent denies plaintiff's characterization of them.

    24.    The reason for two different settlement statements appears to be that the disbursements and other terms of the transaction were changed after the closing. The settlement statement signed by the Powells on June 21, 2007 (Exh. C)

7

shows the Powells would receive $53,117.52 out of the loan proceeds (Exh. C, line 303). The second settlement statement (Exh. D), faxed to the Powells' counsel on June 28,2007 by Regent, shows $11,711.00 of unauthorized disbursements) some of which were for debts that had been discharged in bankruptcy or otherwise satisfied. The Powells received $41,406.52 cash back on June 27j 2007 (Exh. D, line 303).

ANSWER:   Objection.  This allegation is vague in that the phrase "appears to be" is so vague and unclear so as to preclude an answer to the first sentence of this paragraph.  Answering further and without waiving said objection, Regent denies that Exhibits C and D to plaintiffs' complaint are signed, further states that they speak for themselves and accordingly, Regent denies plaintiffs' characterization of them.  Regent admits that plaintiffs received $41,406.52 "Cash to Borrower" as a result of closing Loan #501483999.  Regent denies any disbursements were "unauthorized" and denies the remaining allegations in the paragraph.

25.    Attached as <u>Exhibit G</u> is the June 28, 2007 fax, which includes the second settlement statement that was sent to plaintiffs' counsel along with the closing instructions and a summary of additional disbursements. Plaintiffs had not seen any of these documents, including the version of the settlement statement saying they would receive only $41,406.52, before Regent faxed them to the Powells' counsel on June 28, 2007.

ANSWER:   Regent admits that plaintiffs' complaint includes an Exhibit G but states that such document speaks for itself and accordingly denies the allegations contained in this first sentence of paragraph 25.  Regent denies the second sentence of this paragraph.

26.    The settlement statement that was given to plaintiffs at closing indicates settlement charges of $3,761.90 (Exh. C, line 103), whereas the settlement statement faxed to plaintiff later has settlement charges of $13,657.90 and additional disbursements of $1,795. (Exh D, lines 103 & 112).

8

ANSWER: Regent denies that Exhibits C and D are signed, states that they speak for themselves, denies plaintiffs' characterizations of them and accordingly denies the allegations contained in this paragraph.

27. After the closing, the Powells received documents telling them that their payment, including escrow, would increase to more than $750, the maximum they had told Jackson they could afford. They then discovered that their loan documents showed a monthly tax liability of only $5.33 (or $63.96 annually), whereas their tax liability was actually around $1,600 a year (see Exhibit H, a "First Payment Letter" issued to the clients on June 21, 2007).

ANSWER: Regent has insufficient information to either admit or deny the allegations contained in this paragraph.

28. Plaintiffs did not receive the second settlement statement until after the end of the TILA rescission period, and they did not receive new 3-day notices allowing them to rescind the loan under the terms disclosed on the second settlement statement.

ANSWER: Regent has insufficient to either admit or deny the allegations contained in this paragraph.

29. Plaintiff Alvin Powell called Jackson and Regent to protest the unauthorized payoffs and to try to get the cash he had been promised at the closing. When Regent mailed the checks to the Powells for disbursement, the Powells returned them on or around August 9, 2007 to Regent by certified mail with a letter of protest that explained that the payments were unauthorized and the reasons certain payments were disputed or barred. They did not hear from Regent after that and do not know what happened to the $11,711.00 they returned.

ANSWER: Regent has insufficient information to admit or deny the allegations contained in the first sentence of this paragraph. Regent has insufficient information to admit or deny the allegations contained in the second sentence of this paragraph except to say that on or about August 7, 2007, it received by mail the following Regent checks relative to Loan #501483999: 83189; 83190;

9

83192; 83193; 83194; 83195; 83196; 83197; and 83200. Such funds have been deposited in to the trust fund of Law Offices of Peter S. Stamatis, P.C. pending resolution of this litigation and/or instruction by this Honorable Court.

30.     Chicago Realty received a yield spread premium of more than $1,500.00 in exchange for increasing the interest rate on plaintiffs' loan. Chicago Realty was the original lender, selling or assigning the loan to Flagstar on August 1, 2007 (Exhibit I).  It also received fees amounting to almost $2,000.

ANSWER:    Regent has insufficient information to admit or deny the allegations contained in this paragraph.  Regent further states that Exhibit I speaks for itself and denies plaintiffs' characterization of it.

## RIGHT TO RESCIND
## COUNT I – TRUTH IN LENDING ACT

The allegations contained in this Count I are not directed to Regent and for that reason, Regent makes no answer thereto.

## COUNT II – ILLINOIS TITLE INSURANCE ACT

46.     Plaintiffs incorporate paragraphs 1-30.

ANSWER:    Regent adopts and realleges its answers to paragraphs 1-30 as though fully set forth herein.

47.     This claim is against Regent only.

ANSWER:    This Count II speaks for itself and no answer is required.

48.     The Illinois Title Insurance Act, 215 ILCS § 155/1 et seq. ("ITIA") defines the "business of title insurance" to as "'[i]ssuing as insurer or offering to issue as insurer title insurance, and ..." in conjunction with this, the "handling of

10

escrows, settlements, or closings." See 215 ILCS § 155/3(1)(A), id. (B)(iii). The ITIA further states that "[i]t is unlawful for any company to engage ... in the business of title insurance without first procuring from the Secretary a certificate of authority," and that "[n]o ... firm ... or other legal entity shall act as or hold itself out to be a title insurance agent unless duly registered by a title insurance company with the Secretary." 215 lLCS § 155/5, id. § 155/16(a).

ANSWER:   Regent states that The Illinois Code, including the Illinois Title Insurance Act, speaks for itself and denies plaintiffs' characterization of it.

49.   The Powells' settlement statement lists Regent as the "Settlement Agent" and also shows Regent receiving fees on its own behalf for closing and settlement services, including a closing fee, a remote closing fee, a courier fee, and an Illinois Agent Registration Fee.  See Exh. C; id. lines 1101-07. A charge of $247.00 for Title Insurance was paid to Regent purportedly "as agent for Ticor Title Insurance Company." Id. Line 1108

ANSWER:   Objection.  This allegation is vague in that the phrase "Powells' settlement statement" is not defined.  Regent further states that Exhibit C is unsigned, speaks for itself and accordingly denies plaintiffs' characterization of it. Regent admits it received $247 for Title Insurance in its capacity as "Title Agent for Ticor Insurance Company."  Regent denies any remaining allegations in this paragraph.

50.   According to the Illinois Division of Financial Institutions online list of licensed title companies (Exhibit K), regent is not a licensed title company.

ANSWER:   Regent has insufficient information to admit or deny what some on-line list said about it on a certain date and time.  Answering further, Regent affirmatively states it is not a title insurance company as defined by 215 ILCS 155/3(2), but is a licensed title agent as defined by 215 ICLS 155/3(3).

51.   Section 25 of the ITIA provides:

> (a) Any person or persons who violate the prohibitions or limitations of subsection (a) of Section 21 of this Act shall be liable to the person or persons charged for the settlement service involved in the violation for actual damages.
>
> (b) Any title insurance company or a title insurance agent who violates the prohibitions or limitations of subsection (a) of Section 21 of this Act shall be subject to injunctive relief. If a permanent injunction is granted, the court may award actual damages. Reasonable attorney's fees and costs may be awarded to the prevailing party.

215 lLCS § 155/25. Section 21 of the ITIA lists five grounds under which the Secretary of State may fine or otherwise impose sanctions, including making material misstatements or fraudulent misrepresentations, and misappropriating or tortuously converting money held in a fiduciary capacity. See 215 ILCS § 155/21(a).

ANSWER: Regent states that the Illinois Code, including the ITIA, speaks for itself and accordingly denies plaintiffs' characterization of it.

52. During the closing of the Powells' mortgage on June 21, 2007, an agent of Regent engaged in at. least five material misstatements and misrepresentations. First, the agent is listed on the closing instructions as Dawn Walker; however, the Powells dealt with a man, who gave them a Regent business card that said "Paul Koutnik, Escrow Closer." The Powells signed documents in Mr. Kutnik's presence but did not see him sign anything. Second, Mr. Koutnik had the Powells complete paperwork staling that the closing took place at Regent's downtown Chicago office location, when in fact it took place at the kitchen table in their home. Third, when the Powells specifically asked about the amount of cash back, the agent told them that they would get $53,117.52 back in cash from the loan as listed on their settlement statement, but they only received $41,406.52. Fourth, the agent failed to inform the Powells that the closing instructions provided that certain debts must he paid off. Fifth, the agent failed to provide the Powells with an accurate settlement statement reflecting these payoffs.

ANSWER: Regent denies it engaged in any, let alone "at least five material misstatements and misrepresentations" relative to plaintiffs and accordingly, denies all allegations contained in this paragraph.

53. Subsequent to the closing or the Powells' mortgage, sometime between June 21 and June 28, 2007, Regent engaged in further material misrepresentations.

12

Specifically, Regent substituted a settlement statement containing different payout amounts for the one the Powells had signed on July 21,2007. Regent then issued checks to numerous creditors without the Powells' authorization. When the Powells returned the checks on August 9,2007, Regent then held $11,711.00 of plaintiffs' monies, failing to refund the returned monies to the Powells or to take steps that would reduce the amount of their mortgage.

    ANSWER:   Regent denies it made any misrepresentations to plaintiffs and accordingly denies the allegations contained in this paragraph.

    54.   Plaintiffs were induced to transact with Regent and Chicago Realty by means of these misrepresentations.

    ANSWER:   Regent denies it made any misrepresentations to plaintiff and accordingly denies the allegations contained in this paragraph.

    55.   Defendant Regent made the representation in the course of trade and commerce, namely the closing of a residential loan.

    ANSWER:   Regent denies it made any misrepresentations to plaintiff and accordingly denies the allegations contained in this paragraph.

    56.   Defendant Regent made the representation for the purpose of inducing reliance, in the form of the plaintiffs finalizing the loan with Regent and Chicago Realty.

    ANSWER:   Regent denies it made any misrepresentations to plaintiff and accordingly denies the allegations contained in this paragraph.

    57.   Plaintiffs were injured by Regent's misrepresentations in that they received $11,711.00 less cash out from their loan than expected and they have been paying interest on that sum as part of their mortgage although all checks were returned to Regent.

    ANSWER:   Regent denies it made any misrepresentations to plaintiff and accordingly denies the allegations contained in this paragraph.

WHEREFORE, Regent denies any liability to plaintiffs and respectfully requests this Honorable Court enter judgment in its behalf and against the plaintiffs and award it costs and any and all other relief this Honorable Court deems appropriate.

### COUNT III – ILLINOIS CONSUMER FRAUD ACT

58. Plaintiffs incorporate paragraphs 1-57. This claim is against defendants Regent, Chicago Realty, and Jackson.

ANSWER: Regent adopts and realleges is answers to paragraphs 1-57 as though fully set forth herein.

59. Defendants engaged in unfair and deceptive acts and practices, in violation of § 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, by promising at closing to give plaintiffs $53,117 .52 and then sending plaintiffs only $41,406.52, by providing false documents for the plaintiffs' signature at closing, and by misrepresenting plaintiffs' property tax liability and the total monthly payment on the loan.

ANSWER: Regent denies it engaged in any unfair and deceptive practices and accordingly denies the allegations contained in this paragraph.

60. Regent, Chicago realty, and Jackson engaged in such practices in the course of trade and commerce, namely a residential loan transaction.

ANSWER: Regent denies it engaged in any unfair and deceptive practices and accordingly denies the allegations contained in this paragraph.

61. Regent, Chicago Realty, and Jackson engaged in such practices for the purpose of inducing reliance on the part of plaintiffs to enter into the disadvantageous transaction, namely a loan with high monthly payments than they could afford and with a significantly lower cash payout than expected.

ANSWER: Regent denies it engaged in any unfair and deceptive practices and accordingly denies the allegations contained in this paragraph.

62.     Plaintiffs did, in fact, rely on Regent, Chicago Realty, and Jackson's promises by entering into a loan under terms that they would have rejected had they known about them.

ANSWER:   Regent denies it engaged in any unfair and deceptive practices and accordingly denies the allegations contained in this paragraph.

63.     Plaintiffs were damaged as a result. Specifically, they received $11,711.00 less cash than expected, they are paying a higher monthly payment than disclosed, and they are paying interest on $11,711.00 that remains undisbursed.

ANSWER:   Regent denies it engaged in any unfair and deceptive practices and accordingly denies the allegations contained in this paragraph.

64.     Regent, Chicago Realty, and Jackson's conduct was intentionally deceptive and malicious. The plaintiffs took care to disclose and confirm material terms of the loan before signing the loan documents only to discover that a second settlement statement had been substituted by one of the defendants after closing. Mr. Powell is on disability and he and his wife have suffered considerable emotional anguish over this loan. Substantial punitive damages are warranted.

ANSWER:   Regent denies it engaged in any unfair and deceptive practices and accordingly denies the allegations contained in this paragraph.

WHEREFORE, Regent denies any liability to plaintiffs and respectfully requests this Honorable Court enter judgment in its behalf and against the plaintiffs and award it costs and any and all other relief this Honorable Court deems appropriate.

         Respectfully submitted,

Dated:  1/17/08

         /s/ Peter S. Stamatis
         Regent's lawyer


Peter S. Stamatis
Law Offices of Peter S. Stamatis, P.C.
77 West Wacker Drive
Suite 4800
Chicago, Illinois 60601
Telephone:  312 606 0045
Facsimile:  312 606 0085
Attorney code:  6217496

## **AFFIRMATIVE DEFENSES**

1. **Illinois Title Insurance Act Does not Apply to Regent:** Regent Title Insurance Agency LLC ("Regent") is not a "person" as set forth in 215 ILCS 155/25(a), but an Illinois limited liability company. Accordingly, plaintiffs may not seek actual damages against Regent pursuant to such statute as 215 ILCS 155/25(a) asserts that only "person or persons" who violate the prohibitions or limitation of [the Illinois Title Insurance Act] are subject to the "person or persons charged for the settlement service.

2. **No Subject Matter Jurisdiction as to Regent:** Regent denies that this Court has subject matter jurisdiction over Counts II and III, both counts which bring claims brought exclusively under Illinois statutes, namely the Illinois Title Insurance Act, and the Illinois Consumer Fraud and Deceptive Practices Act respectively. Regent states, however, that this Honorable Court, at its discretion, may have "Supplemental Jurisdiction" over Regent pursuant to 28 USCA §1367(a) to the extent that Counts II and III are "so related" to Count I that they "form part of the same case or controversy under Article III of the United States Constitution." Such is a determination for this Honorable Court. Regent futher states that in the event that Count I is dismissed, voluntarily or otherwise, then such supplemental jurisdiction, if it exists at all, would end.

Respectfully submitted,

Dated: 1/17/08

/s/ Peter S. Stamatis
Regent's lawyer


Peter S. Stamatis
Law Offices of Peter S. Stamatis, P.C.
77 West Wacker Drive
Suite 4800
Chicago, Illinois 60601
Telephone: 312 606 0045
Facsimile: 312 606 0085
Attorney code: 6217496