**EXHIBIT   1**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALVIN POWELL and CYNTHIA POWELL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 07 CV 6594 |
| | ) | |
| FLAGSTAR BANK, FSB, MORTGAGE | ) | Judge Harry D. Leinenweber |
| ELECTRONIC REGISTRATION SYSTEMS, | ) | Mag. Judge Morton Denlow |
| INC., REGENT TITLE INSURANCE AGENCY, | ) | |
| LLC, CHICAGO REALTY NETWORK, LLC, and | ) | |
| MATRICIA J. JACKSON, an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER TO COMPLAINT

Now Come Defendants Flagstar Bank, FSB (hereinafter "Flagstar") and Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS") (hereinafter collectively "These Answering Defendants"), by and through their attorneys, Tribler Orpett & Meyer, P.C., and for their Answer to the Complaint filed by Plaintiffs Alvin and Cynthia Powell (hereinafter collectively "Plaintiffs"), state as follows:

1.      Plaintiffs Alvin Powell and Cynthia Powell bring this action against a mortgage lender and its affiliates to rescind a mortgage for violation of: (A) the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226; (B) the Illinois Title Insurance Act, 215 II CS § 155/1; and (C) the Illinois Consumer Fraud Act, 815 1LCS § 505/2.

**ANSWER**:

These Answering Defendants admit Plaintiffs have attempted to assert claims against various Defendants for alleged violations of 15 U.S.C. § 1601 et seq. and 12 C.F.R. part 226, , 215 II CS § 155/1, and 815 1LCS § 505/2. These Answering Defendants deny that Plaintiffs are entitled to any recovery on any claims and/or for any fees or costs against These Answering Defendants. To the extent that the allegations of Paragraph 1 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied.

2.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 15 U.S.C. §1640 (TILA), Defendants transact business in the District and are deemed to reside here.

**ANSWER**:

These Answering Defendants admit that Plaintiffs have attempted to assert claims under federal statutes. To the extent that the allegations of Paragraph 2 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied. These answering Defendants deny that they reside within this district.

3.      Plaintiffs Alvin Powell and Cynthia Powell ("the Powells") are husband and wife and jointly own and reside in a home at 14347 S. Sherman Avenue, Posen, Illinois 60460,

**ANSWER**:

These Answering Defendants lack sufficient knowledge to enable them to admit or deny the allegations of Paragraph 3.

4.     Defendant Flagstar Rank, FSB ("Flagstar") is a bank which does business in Illinois, including maintaining a loan center in Gurnee, Illinois.  Its business address is 5151 Corporate Drive, Troy, MI 48098.

**ANSWER**:

These Answering Defendants admit the allegations of Paragraph 4.

5.     Flagstar is the assignee and current holder of the Powells' loan and is listed as the lender on some of the Powells' loan documents.

**ANSWER**:

These Answering Defendants admit the allegations of Paragraph 4, except that, to the extent that the allegations of Paragraph 5 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied.

6.     Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a. Delaware corporation doing business in Illinois. Its registered agent and office are CT Corporation System, 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

**ANSWER**:

These Answering Defendants admit the allegations of Paragraph 6.

7.     MERS is the mortgagee under the Powells' mortgage.

**ANSWER**:

These Answering Defendants admit that MERS is listed as the mortgagee on the document attached to Plaintiffs' Complaint as Exhibit B.

8.     Defendant Regent Title Insurance Agency, LLC ("Regent") is an Illinois limited liability company.  Its business address is 33 N. Dearborn, Suite 803, Chicago, IL 60602. Its registered agent and office are Michael S. Roberts, 55 W. Monroe, Suite 1700, Chicago, IL 60603.

**ANSWER**:

These Answering Defendants lack sufficient information to enable them to admit or deny the allegations of Paragraph 8.

9.     Regent acted as the closing agent for the Powells' mortgage and as agent for Ticor Title Insurance Company in regard to the sale of title insurance to the Powells.

**ANSWER**:

These Answering Defendants lack sufficient information to enable them to admit or deny the allegations of Paragraph 9.

10.     Defendant Chicago Realty Network - Real Estate, LLC ("Chicago Realty") is an Illinois limited liability company. Its business address is 5707-5711 S. Wentworth, Chicago, IL 60621.  Its registered agent and office are Susan Meyer, 180 N. LaSalle Street, Suite 2700, Chicago, IL 60601.

**ANSWER**:

These Answering Defendants lack sufficient information to enable them to admit or deny the allegations of Paragraph 10.

11.    Chicago Realty was the broker for the Powells' loan and the original lender pursuant to the mortgage, the note, and the settlement statement signed by the Powells.

**ANSWER**:

To the extent that the allegations of Paragraph 11 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied.  Further, these Answering Defendants lack sufficient information to enable them to admit or deny the allegations of Paragraph 11 concerning documents that are not attached to the Complaint.

12.    Chicago Realty is a "creditor" as defined in TILA and Regulation Z.

**ANSWER**:

Insofar as the allegations of Paragraph 11 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied.

13.    Defendant Matricia J. Jackson ("Jackson") is a representative of Chicago Realty and holds Illinois licenses as a both a Licensed Real Estate Salesperson and a Loan Originator (license number 031.0022223).   On information and belief, she may be found in Cook County, Illinois, at 14414 Minerva Avenue. Dolton, Illinois 60419.

**ANSWER**:

These Answering Defendants lack sufficient information to enable them to admit or deny the allegations of Paragraph 13.  Further, to the extent that the allegations of Paragraph 13 constitute legal conclusions to which no response is required, to the extent that an answer might

be deemed necessary, those allegations are denied.

14.     On or around April 26, 2007, plaintiffs applied for a mortgage though Chicago Realty.

**ANSWER**:

These Answering Defendants lack sufficient information to enable them to admit or deny the allegations of Paragraph 14.

15.     Their contact at Chicago Realty was Jackson and they spoke to her many times by telephone and also relayed information to her through her husband, Jeffery Jackson.

**ANSWER**:

These Answering Defendants lack sufficient information to enable them to admit or deny the allegations of Paragraph 15.

16.     Jackson signed a document as "Loan Originator" with the Powells entitled "Mortgage Broker Fee Agreement and Disclosure" on April 26, 2007; however, Jackson did not become licensed as a Loan Originator until May 24, 2007 according to the State of Illinois Division of Banking website .

**ANSWER**:

These Answering Defendants lack sufficient information to enable them to admit or deny the allegations of Paragraph 16.

17.     Plaintiffs needed and used the loan for personal, family or household purposes, namely, refinancing of prior debt incurred for such purposes.

**ANSWER**:

These Answering Defendants lack sufficient information to enable them to admit or deny the allegations of Paragraph 17.

18.     The Powells had rejected a previous loan offer because the loan officer had told them they had to pay a more than $9,258 disputed debt out of the proceeds of the loan as a condition of the deal.

**ANSWER**:

These Answering Defendants lack sufficient information to enable them to admit or deny the allegations of Paragraph 18.

19.     At the time the Powells signed the loan application with Chicago Realty, they told Jackson that they would not take the loan if they had to pay the $9,258 disputed debt.  Mr. Powell reiterated this during a phone conversation that took place on June 19, 2007 at around 2:20 p.m. in front of witnesses.  Both times, Jackson assured the Powells everything was fine.

**ANSWER**:

These Answering Defendants lack sufficient information to enable them to admit or deny the allegations of Paragraph 19.

20.    Before the closing, the Powells provided Jackson with documentation on their property taxes, which came to approximately $1,600 per year.

**ANSWER**:

These Answering Defendants lack sufficient information to enable them to admit or deny the allegations of Paragraph 20.

21.    Before the closing, the Powells provided Jackson with information on the maximum monthly payment they could make, namely $750.

**ANSWER**:

These Answering Defendants lack sufficient information to enable them to admit or deny the allegations of Paragraph 21.

22.    The loan was closed on June 21, 2007 at the Powells' home.

**ANSWER**:

These Answering Defendants admit that loan No. 501483999 closed on June 21, 2007. These Answering Defendants lack sufficient information to enable them to admit or deny the remaining allegations of Paragraph 22.

23.    The following are documents relating to the loan:

(1)    A note, Exhibit A;

(2)    A mortgage, Exhibit B;

(3)    Two different settlement statements, Exhibits C:-D, only one of which (Exh. C) plaintiffs received and signed at the

closing;

(4)    A Truth in Lending statement, <u>Exhibit E;</u>

(5)    The three-day notice of right to cancel required by the Federal Reserve Board, <u>Exhibit F;</u>

**ANSWER**:

These Answering Defendants respond that documents speak for themselves and, to the extent that the allegations of Paragraph 23 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied. Further, These Answering Defendants lack sufficient information to enable them to admit or deny the remaining allegations of Paragraph 23(3).

24.    The reason for two different settlement statements appears to be that the disbursements and other terms of the transaction were changed after the closing.  The settlement statement signed by the Powells on June 21, 2007 (Exh. C), shows the Powells would receive $53,117.52 out of the loan proceeds (Exh. C, line 303).  The second settlement statement (Exh. D), faxed to the Powells' counsel on June 28, 2007 by Regent, shows $11,711.00 of unauthorized disbursements, some of which were for debts that 'had been discharged in bankruptcy or otherwise satisfied.  The Powells received $41,406.52 cash back on June 27, 2007 (Exh. D, line 303).

**ANSWER**:

These Answering Defendants respond that documents speak for themselves and, to the extent that the allegations of Paragraph 24 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied.

Further, These Answering Defendants lack sufficient information to enable them to admit or deny the remaining allegations of Paragraph 24.


25.     Attached as <u>Exhibit G</u> is the June 28, 2007 fax, which includes the second settlement statement that was sent to plaintiffs' counsel along with the closing instructions and a summary of additional disbursements. Plaintiffs had not seen any of these documents, including the version of the settlement statement saying they would receive only $41,406 52, before Regent faxed them to the Powells' counsel on June 28, 2007.

**ANSWER**:

These Answering Defendants respond that documents speak for themselves and, to the extent that the allegations of Paragraph 25 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied. Further, These Answering Defendants lack sufficient information to enable them to admit or deny the remaining allegations of Paragraph 25.


26.     The settlement statement that was given to plaintiffs at closing indicates settlement charges of $3.761.90 (Exh. C, line 103), whereas the settlement statement faxed to plaintiff later has settlement charges of $13,657.90 and additional disbursements of $1,795. (Exh. D, lines 103 & 112).

**ANSWER**:

These Answering Defendants respond that documents speak for themselves.  Further, These Answering Defendants lack sufficient information to enable them to admit or deny the remaining allegations of Paragraph 26.

27.    After the closing, the Powells received documents telling them that their payment, including escrow, would increase to more than $750, the maximum they had told Jackson they could afford. They then discovered that their loan documents showed a monthly tax liability of only $5.33 (or $63.96 annually), whereas their tax liability was actually around $1,600 a year (see Exhibit H, a "First Payment Letter" issued to the clients on June 21, 2007).

**ANSWER**:

These Answering Defendants respond that documents speak for themselves.   These Answering Defendants lack sufficient information to enable them to admit or deny the allegations of Paragraph 27.


28.    Plaintiffs did not receive the second settlement statement until after the end or the TILA rescission period, and they did not receive new 3-day notices allowing them to rescind the loan under the terms disclosed on the second settlement statement.

**ANSWER**:

These Answering Defendants lack sufficient information to enable them to admit or deny the allegations of Paragraph 28.   Further, to the extent that the allegations of Paragraph 28 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied. These Answering Defendants deny that Flagstar failed to provide required disclosures to Plaintiffs.


29.    Plaintiff Alvin Powell called Jackson and Regent to protest the unauthorized payoffs and to try to get the cash he had been promised at the closing.  When Regent mailed the checks to the Powells for disbursement, the Powells returned them on or around August 9,

2007 to Regent by certified mail with a letter of protest that explained that the payments were unauthorized and the reasons certain payments were disputed or barred.  They did not hear from Regent after that and do not know what happened to the $11,711,00 they returned.

**ANSWER**:

These Answering Defendants lack sufficient information to enable them to admit or deny the allegations of Paragraph 29.

30.    Chicago Realty received a yield spread premium of more than $1.500,00 in exchange for increasing the interest rate on plaintiffs loan. Chicago Realty was the original lender, selling or assigning the loan to Flagstar on August 1, 2007 (Exhibit l).  It also received fees amounting to almost $2,000.

**ANSWER**:

To the extent that the allegations of Paragraph 30 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied.  These Answering Defendants lack sufficient information to enable them to admit or deny the allegations of Paragraph 30.

## **RIGHT TO RESCIND**

## **COUNT I — TRUTH IN LENDING ACT**

31.    Plaintiffs incorporate paragraphs 1-30.

**ANSWER**:

These Answering Defendants repeat and reallege their answers set forth in response to the allegations set forth in Paragraphs 1-30 as though set forth verbatim herein

32.     This claim is against Flagstar, MERS, and Chicago Realty.

**ANSWER**:

These Answering Defendants admit that Count I of Plaintiffs' Complaint states that it is asserted against Flagstar, MERS and Chicago Realty.

33.     In order to give consumer borrowers the opportunity to rethink transactions that would put the titles to their homes at risk, the Truth in Lending Act gives home owners who refinance their mortgages with a new lender the right to rescind the transaction until midnight of the third business day following [he consummation of the transaction or three days of receiving notice of their right to rescind, whichever is later.  More specifically, the statute, provides that:

> **Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest ... is or will he retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation or the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. (15 U.S.C. 1635(a)).**

**ANSWER**:

Insofar as the allegations of Paragraph 33 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied.

34.     To ensure that rescission is a viable option, the statute also provides that if the customer elects to rescind, the customer is entitled to the return of all money or property that the customer has given as part of the credit transaction. More specifically, the statute provides:

> **When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. (15 U.S.C. § 1635(h).)**

**ANSWER**:

Insofar as the allegations of Paragraph 34 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied.

35.     To ensure that home owner borrowers are aware of these rights, the statute requires lenders to disclose rescission rights to customers clearly, conspicuously and accurately. More specifically, the statute provides:

> **The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section. (15 U.S.C. § I635(a).)**

**ANSWER**:

Insofar as the allegations of Paragraph 35 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied.

36.    Regulation Z, promulgated by the Federal Reserve Board pursuant to the Truth in Lending Act, amplifies the statutory requirements. The regulation restates the statutory rescission right, 12 C.F.R. § 226.23(a), and requires that the creditor "deliver" to each person entitled to rescind "two copies" of a document that "dearly and conspicuously disclose" 12 § 226.23(b)(1) the borrower's rescission rights.

**ANSWER**:

Insofar as the allegations of Paragraph 36 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied.

37.    More specifically, the regulation provides.

**In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

(i)    **The retention or acquisition of a security interest in the consumer's principal dwelling.**

(ii)    **The consumer's right to rescind the transaction.**

(iii)    **How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.**

(iv)    **The effects of rescission, as described in paragraph (d) of this section.**

(v)    **The date the rescission period expires. (12 C.F.R. § 226.23(b0(4)**

**ANSWER**:

Insofar as the allegations of Paragraph 37 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied.

38.     In connection with the plaintiff's' loan, Chicago Realty and/or Flagstar failed to provide the required disclosures of the plaintiffs right to cancel within three days, in violation of 15 U.S.C. §1635 and 12 C.F.R. § 226.23, and failed to provide the required financial disclosures, in violation of' 15 U.S.C. §1638 and 12 C.F.R. §226.18, for (without limitation) the reasons stated below.

**ANSWER**:

Insofar as the allegations of Paragraph 38 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied.  These Answering Defendants deny that Flagstar failed to provide required disclosures to Plaintiffs and deny the allegations of Paragraph 38 to the extent they attempt to ascribe liability to These Answering Defendants.

39.     The documents are dated as if the transaction was consummated on June 21, 2007, after which the terms of the transaction changed.

**ANSWER**:

These Answering Defendants respond that documents speak for themselves.  These Answering Defendants lack sufficient information to enable them to admit or deny the remaining allegations of Paragraph 39.  Further, These Answering Defendants deny the allegations of

Paragraph 39 to the extent they attempt to ascribe liability to These Answering Defendants.

40.    In fact, the loan was never been properly consummated, since plaintiffs did not sign the version of the settlement statement providing for $11,711.00 in disbursements to creditors and a cash payout of only $41,406.52.

**ANSWER**:

Insofar as the allegations of Paragraph 40 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied and These Answering Defendants deny the allegations of Paragraph 40 to the extent they attempt to ascribe liability to These Answering Defendants.  Further, These Answering Defendants lack sufficient information to enable them to admit or deny the remaining allegations of Paragraph 40.

41.    The documents do not reflect the actual terms of the transaction.

**ANSWER**:

Insofar as the allegations of Paragraph 41 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied. These Answering Defendants respond that documents speak for themselves.  Further, These Answering Defendants deny the allegations of Paragraph 41 to the extent they attempt to ascribe liability to These Answering Defendants.

42.     The Powells sent a letter to Flagstar requesting rescission on or around August 6, 2007.  Additionally, counsel for the Powells sent notice of rescission to Chicago Realty, MERS, and Flagstar on August 21, 2007.  A copy of counsel's letter is attached as <u>Exhibit J.</u>

**ANSWER**:

These Answering Defendants respond that documents speak for themselves.  On information and belief, These Answering Defendants deny the allegations of Paragraph 42 regarding a letter purportedly sent on or about August 6, 2007.  These Answering Defendants further deny the allegations of Paragraph 42 to the extent they attempt to ascribe any liability to These Answering Defendants.

43.     The loan has not been rescinded.

**ANSWER**:

These Answering Defendants admit the allegations of Paragraph 43, however These Answering Defendants deny the allegations of Paragraph 43 to the extent they attempt to ascribe liability to These Answering Defendants.

44.     Under 15 U.S.C. §1641(c), the right to rescind may be exercised against any assignee.

**ANSWER**:

Insofar as the allegations of Paragraph 44 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied.

45.    15 U.S.C. §1635(g) provides:

**Additional relief**

**In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.**

Insofar as the allegations of Paragraph 45 constitute legal conclusions to which no response is required, to the extent that an answer might be deemed necessary, those allegations are denied.

## COUNT II – ILLINOIS TITLE INSURANCE ACT

46.    Plaintiffs incorporate paragraphs 1-30.

**ANSWER**:

These Answering Defendants repeat and reallege their answers set forth in response to the allegations set forth in Paragraphs 1-30 as though set forth verbatim herein

47 - 57.

**ANSWER**:

This Count II and all of the allegations of the Paragraphs 47 -57 contained therein as well as the prayer for relief contained therein, are asserted only against Regent Title Insurance Agency, LLC, and not against These Answering Defendants from whom no answer thereto is required and, to the extent that an answer might be deemed necessary, such allegations and prayer for relief are denied as to These Answering Defendants.

## COUNT III - ILLINOIS CONSUMER FRAUD ACT

58.    Plaintiffs incorporate paragraphs 1-57. This claim is against defendants Regent, Chicago Realty, and Jackson,

**ANSWER**:

In response to Paragraph 58, to the extent that Paragraph 58 incorporates Paragraphs 1-45, These Answering Defendants repeat and reallege their answers set forth in response to the allegations set forth in Paragraphs 1-45 as though set forth verbatim herein.

In response to Paragraph 58, to the extent that Paragraph 58 incorporates Paragraph 46, These Answering Defendants repeat and reallege their answers set forth in response to the allegations set forth in Paragraph 46 as though set forth verbatim herein.

In response to Paragraph 58, to the extent that Paragraph 58 incorporates Paragraphs 47-57, These Answering Defendants repeat and reallege the response set forth in response to the allegations set forth in Paragraphs 47-57 as though set forth verbatim herein.

59-64.

**ANSWER**:

This Count III and all of the allegations of the Paragraphs 59-64 contained therein as well as the prayer for relief contained therein, are asserted only against Regent Title Insurance Agency, LLC, Chicago Realty Network, LLC and Matricia J. Jackson, and not against These Answering Defendants from whom no answer thereto is required and, to the extent that an

answer might be deemed necessary, such allegations and prayer for relief are denied as to These

Answering Defendants.


Date:   February 20, 2008                    Respectfully submitted,

                                              s/ Kurt B. Drain
                                             Kurt B. Drain, ARDC # 6271753
                                             Tribler Orpett & Meyer, P.C.
                                             225 West Washington Street, Suite 1300
                                             Chicago, Illinois 60606
                                             312-201-6400
                                             312-201-6401 (facsimile)
                                             kbdrain@tribler.com
                                             Attorneys for Flagstar Bank, FSB and Mortgage
                                             Electronic Registration Systems, Inc.


Harlene G. Matyas, Esq.
Kurt B. Drain, Esq.
TRIBLER ORPETT & MEYER, P.C.
225 West Washington Street, Suite 1300
Chicago, Illinois  60606
312-201-6400
312-201-6401 (facsimile)